**Thomas A. ELROD, Jr., Plaintiff–Respondent**

v.

**Cherie Renee ELROD, Defendant–Appellant.**

**No. 26921.**

Missouri Court of Appeals,
Southern District,
Division One.

May 31, 2006.

(2000), unless otherwise indicated.

Thomas M. Benson, Lowther Johnson, LLC, Springfield, for appellant.

J. Kent Robinson, Williams, Robinson, Rigler & Buschjost, P.C., Rolla, for respondent.

JOHN E. PARRISH, Judge.

Cherie Renee Elrod (wife) appeals a judgment in an action for dissolution of marriage. This is the second time this case has been before this court. *See Elrod v. Elrod,* 144 S.W.3d 373 (Mo.App.2004) (*Elrod I*). Following remand, the trial court entered judgment dividing marital property and marital debt and denying wife's request for maintenance. This court affirms in part, reverses in part, and remands for further proceedings as hereafter directed.

Thomas A. Elrod, Jr., (husband) brought this action for dissolution of marriage. *Elrod I* sets forth facts relative to the issues that were before the court in that appeal. Those facts will not be repeated in this opinion unless necessary to explain issues raised by this appeal. *Elrod I* may be reviewed in conjunction with this opinion for a more complete understanding of the circumstances of the case. The issues the trial court was to determine following the remand ordered by *Elrod I* were the division of marital property and marital debt, and wife's request for maintenance. The trial court heard additional evidence, after which it denied wife's request for maintenance. It divided marital property and marital debt in the net amount of $354,568 as follows:

|  | Husband | Wife | Total |
| --- | --- | --- | --- |
| Marital property | $ 511,060 | $167,827 | $678,887 |
| Marital debt | (244,948) | ( 79,371) | (324,319) |
| Cash payment ordered | ( 52,000) | 52,000 | |
| Net distribution · | $214,112 | $140,456 | $354,568 |
| Percent of net distribution | 60% | 40% | |

The judgment set over non-marital property in the amount of $33,000 to husband and $47,300 to wife.

" 'On appeal of a dissolution of marriage proceeding, [this court] review[s] the evidence in the light most favorable to the trial court's decision.' " *Reynolds v. Reynolds,* 109 S.W.3d 258, 265 (Mo.App.2003), *quoting Taylor v. Taylor,* 12 S.W.3d 340, 344 (Mo.App.2000).

When reviewing an appeal of a dissolution of marriage proceeding, "[t]his court will review the judgment of the trial court under the standard of review applicable to any other court-tried case." *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo.App.2002). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the

weight of the evidence, or it erroneously declares of applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). This court defers to the trial court's determination of the credibility of witnesses. *David v. David,* 954 S.W.2d 611, 614 (Mo.App.1997). Additionally, "[t]he party challenging the dissolution decree has the burden of demonstrating error." *Taylor,* 12 S.W.3d at 344.

*Reynolds, supra,* at 267.

Wife presents four points on appeal. Point I argues that the trial court erred in denying wife's motions for continuance of the trial following remand; that "the court abused its discretion in that there was sufficient evidence in the record that wife

was unavailable for trial because she was admitted to Phelps County Regional Medical Center on the date of trial and was receiving treatment and further in that said denial substantially affected the outcome of the trial on the remanded issues in that the evidence wife would have presented at said trial was material."

This court finds no copy of a motion for continuance in the legal file that bears a signature of wife or her attorney, although there is reference to wife filing a motion for continuance. The case was scheduled for hearing on December 20, 2004. A typewritten entry on the copy of the trial court's "CASE HISTORY" recites:

> 12/20/04  Motion Filed
> Motion for Continuance
> Attorney for Defendant
> 12/20/04 OVR

Another entry dated "12/20/04" appears in the "CASE HISTORY" that states:

> CAUSE IS CALLED. J. KENT ROBINSON APPEARS WITH PLANTIFF, THOMAS ELROD. JAMES THOMAS APPEARS ON BEHALF OF CHERI [SIC] ELROD WHO DOES NOT APPEAR. JAMES THOMAS FILES MOTION FOR CONTINUANCE. SAID MOTION IS DENIED. . . .

A third entry in the "CASE HISTORY" dated "12/20/04" recites the following:

> Comes now Respondent by and through her attorney, James L. Thomas and request [sic] that this matter be continued based upon the following:
>
> 1. That the Respondent missed two appointments last week at lawyer's office;
>
> 2. That on late Friday Dec 17, 2004, Respondent telephone [sic] James L. Thomas (Respondent's Office) and informed the office that she was in Phelps Regional Medical Center (hospital)
>
> 3. That pursuant to the Court's Order James L. Thomas went to Phelps County Regional Hospital and attempted to locate the respondent
>
> 4. Admitting advised James L. Thomas that respondent was in room 128 at Phelps Regional Hospital.
>
> 5. James L. Thomas went to medical records and picked up a Phelps County Regional Medical Center Authorization for release of information.
>
> 6. James L. Thomas went to the nurse's station for Room 128. The nurse stopped James L. Thomas was advised that Ms. Elrod was not in her room and was receiving treatment.
>
> 7. The nurse would not allow James L. Thomas to locate respondent nor would the nurse take the medical release to respondent.
>
> Wherefore, James L. Thomas, Attorney for Respondent requests a continuance.
> /s/James L. Thomas, Attorney for Respondent.

The name of the attorney is not handwritten but is typewritten as a facsimile signature as shown above.

At the start of the court proceedings the morning of December 20, 2004, the trial judge stated to wife's attorney, "Mr. Thomas, you filed this morning a Motion to Continue. It should be addressed first." Thereafter, wife's attorney stated he had entered his appearance November 24, 2004, and requested the case be continued from December 1 to December 20. He stated that the mandate in *Elrod I* "was handed down September 28th, 2004 . . . [s]o we're within 90 days from the Mandate." He then recited essentially what appears in the typewritten entry quoted above. At the conclusion of his remarks, wife's attorney requested a continuance. Husband objected to the request. The trial judge observed that it was conjecture why wife was not present

in court. He denied the request for continuance.

Rule 65.03 requires:

An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally. In any application for continuance made within thirty days of the date the matter is scheduled to be heard, the lawyer shall certify that the party for whose benefit the motion is filed has been consulted, that the party is aware of the contents of the motion, and the party's position with respect to the motion.

■ Even if the typewritten statement included in the trial court's case history is considered as an application for continuance, it is neither accompanied by an affidavit nor signed as Rule 55.03(a), as it existed on the trial date, required. Rule 55.03(a) required every pleading and other paper to be signed by at least one attorney of record in the attorney's individual name; that each paper state the signer's address, Missouri bar number, and telephone number, if any. The rule provided that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party."[1]

■ Denial of a request for continuance is seldom reversible error. *In re P.D.*, 144 S.W.3d 907, 911 (Mo.App.2004). Failure to comply with requirements of Rule 65.03 is sufficient grounds for the trial court to deny a motion for continuance. *Id.* Point I is denied.

Point II contends "[t]he trial court erred by considering the potential tax burden of 'rolling stock' assets awarded to husband because said consideration is not supported by the evidence and is against the weight of the evidence in that husband's expert testified that the tax liability would occur only upon the sale of each asset and in that the trial court did not order the sale of said assets nor was there any evidence presented at trial that any such sales were likely to occur." Wife argues that "said consideration of the potential tax burden resulted in an overall unfair and inequitable distribution of the property and debt."

The judgment rendered following remand and additional evidence, after noting that the trial court considered relevant factors "including those set forth in Section 452.330, RSMo., 2000," stated additional matters taken into consideration in the division of marital property and debt. The trial court noted that it "additionally [took] into consideration the following:"

a. Each of the "rolling stock" assets awarded to Husband carries with it a potential tax burden which, according to Husband's expert, has the effect of reducing the value of each of such asset in the hands of Husband.

b. This tax burden resulted from accelerated depreciation taken on the assets during the marriage which had the effect at the time of reducing the tax liability of the parties thereby benefiting both Husband and Wife.

c. The amount of this tax burden was testified to by Husband's expert based upon an assumed sale as of the date on which the marriage of the parties was dissolved.

1. Rule 55.03(a) was amended effective January 1, 2005, to provide means by which pleadings could be filed electronically. The remainder of the rule remains consistent with the prior version in effect the date this case was tried.

d. The precise amount of this tax burden will change with time and will not be precisely determined until the date on which each such asset is actually sold.

In *Elrod I*, the trial court awarded husband credit for "a marital debt" for future tax liability of $78,200. Wife complained in that appeal that the trial court erred in awarding husband a marital debt for that amount of future tax liability. This court agreed with wife explaining:

It has long been held that "[t]ax consequences are a factor to consider in dividing marital assets." *Homfeld v. Homfeld*, 954 S.W.2d 617, 621 (Mo.App. 1997). However, the trial court is not permitted "to make deductions to the marital estate for estimated tax liabilities absent sufficient evidence to support its findings." *Baldwin v. Baldwin*, 905 S.W.2d 521, 524 (Mo.App.1995).

144 S.W.3d at 378. Finding that there was little evidence in the record in *Elrod I* regarding husband's intentions to liquidate the trucking company assets such that a tax liability of $78,200 would be incurred, this court held that the trial court's findings and allocation to husband of that amount as a marital debt was not supported by sufficient evidence. The case was reversed and remanded "for the trial court to make proper determinations concerning the marital property." *Id. Elrod I* observed that the trial court could, upon remand, in its discretion, take additional evidence in reconsidering this matter.

■ Wife relies on two cases in support of Point II, *Baldwin v. Baldwin, supra*, and *Goller v. Goller*, 758 S.W.2d 505 (Mo. App.1988). *Baldwin* was discussed in *Elrod I*. It was cited for the principle that unless there is sufficient evidence to substantiate claimed deductions for tax liabilities, a marital estate should not be reduced to compensate for estimated tax claims.

*Baldwin* acknowledged, however, that "[a] trial court may consider tax consequences when dividing marital assets." 905 S.W.2d at 524. *Baldwin* is not helpful to wife's claim of error in Point II in that the trial court did not determine an amount of anticipated tax liability relative to assets awarded either party. It merely acknowledged that a potential tax consequence could attach to the sale of the "rolling stock" awarded husband upon sale of that property.

Wife's reliance on *Goller* is likewise misplaced. The errors in dividing marital property in *Goller* included the trial judge's decision to base the award of marital property on relative financial contributions of the parties without giving any "persuasive weight" to other statutory factors and the trial judge's opinion that an equal division of marital property was more appropriate in small marital estates than in larger ones. 758 S.W.2d at 508.

Additionally, Mr. Goller's award of marital property was reduced by an estimated tax liability that was not supported by evidence. The estimated tax liability in *Goller* arose from amounts of underpaid taxes for prior years. It was not attributable to marital assets the trial court was awarding either party. *Goller* emphasized that Missouri statutes make no distinction between large and small marital estates in the application of statutory factors for dividing marital property. It further concluded that the prior years' tax deficiencies the trial court considered were speculative; that "[a] judgment based upon speculation cannot be sustained." 758 S.W.2d at 511.

The trial court's acknowledgment that assets awarded to husband carried a potential tax burden was supported by testimony given at trial. Point II is denied.

Point III is directed to the trial court's ruling refusing evidence tendered on be-

half of wife regarding bank account values. Wife argues that "[t]he trial court erred by denying the introduction of evidence ... concerning husband's bank account values at the trial of the remanded issues because said denial was an abuse of discretion and/or misapplied the law in that this court in its mandate and opinion [in *Elrod I*] reversed and remanded the issue of bank account valuation for the trial court to fully develop the record as to the value of the bank accounts 'as close to the effective date of division as possible' and said mandate and opinion did not limit the evidence to any particular bank account and further in that said denial disallowed material evidence and resulted in an overall unfair and inequitable distribution of property and debt."

After husband rested, wife's attorney sought to address the valuation of a checking account the trial court had valued at $79 in *Elrod I*. The trial court stated the opinion that the issue was now moot; that it had "been resolved." An offer of proof followed.

Wife's attorney read from a copy of a bank statement that had been provided to the trial court. The attorney told the judge, "All right. Judge, I'm reading from Maries County Bank statement dated 10–8–02 through 11–04–02, checking account 87424. And the balance shown on November 1, '02 is $14,668.43 cents. That would be the Offer of Proof, your Honor." Thereafter, the parties advised the court that they had nothing further. The court took the case under advisement.

*Elrod I* stated with regard to bank accounts:

Our review of the record reveals that neither Wife nor Husband offered any documentary evidence relating to the value of the accounts at the time of the property division. Wife testified as to the value of the accounts upon the date of dissolution and Husband testified as to the value of the accounts upon the date of separation-nearly three years before this matter came to trial. The general rule is that "the appropriate date for valuing marital property in a dissolution proceeding is the date of trial." *Wright v. Wright*, 1 S.W.3d 52, 62 (Mo. App.1999). . . .

Husband and Wife had "at least an equal burden to carry on the matter of evidence of value. . . ." *Buckner v. Buckner*, 912 S.W.2d 65, 69 (Mo.App.1995). Here, neither party carried that burden. There was simply no actual evidence as to the value of the bank accounts at issue and, as previously related, a trial court "cannot consider an asset for distribution ... unless and until there is evidence that there is a marital asset subject to distribution." *Conrad [v. Conrad]*, 76 S.W.3d [305] at 315 [ (Mo.App.2002) ].

144 S.W.3d at 379–380. After additional discussion, *Elrod I* concluded:

As recognized in *Conrad*, in situations such as this, there is a "lack of a record" on the value of the bank accounts such that it does not allow for meaningful appellate review by this Court. *See Conrad*, 76 S.W.3d at 317. Therefore, in view of the fact that we are remanding the question of the tax liabilities on the rolling stock for further proceedings, we also reverse and remand the issue for the trial court to fully develop the record as to the value of the bank accounts "as close to the effective date of the division as possible." *McCallum [v. McCallum]*, 128 S.W.3d [62] at 66 [ (Mo.App.2003) ]; *see Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo.banc 1987). The trial court may, in its discretion, elect to hear additional evidence on the matter to determine if the assets were secreted or squandered or whether they were legiti-

mately expended on living expenses by Wife. *See Kester [v. Kester]*, 108 S.W.3d [213] at 223 [ (Mo.App.2003) ].

*Id.* at 380. In *Elrod I*, this court affirmed the dissolution of the parties' marriage but reversed the remainder of the judgment "for further proceedings consistent with [that] opinion." *Id.* at 381. The trial court was "expressly authorized to take further evidence in the matter as the trial court may determine." *Id.*

 "Action to be taken upon remand of a case from an appellate court is communicated by that court's mandate." *Parker v. Parker*, 857 S.W.2d 873, 874 (Mo. App.1993). "The appellate court's opinion is a part of the mandate." *Id.* A trial court risks error in doing less than the mandate directs. *Edmison v. Clarke*, 61 S.W.3d 302, 310 (Mo.App.2001). *See also Lombardo v. Lombardo*, 120 S.W.3d 232, 243 (Mo. App.2003).

This court's opinion in *Elrod I* clearly states, "[W]e also reverse and remand the issue for the trial court to fully develop the record as to the value of the bank accounts 'as close to the effective date of the division as possible.'" 144 S.W.3d at 380. The trial court's denial of evidence offered for that purpose did not comply with this court's directive. Point III is granted. Regrettably, the part of the trial court judgment that distributed marital property must again be reversed and the case remanded in order that the value of the parties' bank accounts at the effective date of the division of property may be determined and given appropriate consideration.

Point IV argues that the trial court erred in denying wife maintenance; that evidence submitted at trial was "that she lacked sufficient property to provide for her reasonable needs" and "that she was unable to support herself through appropriate employment." Point IV argues that on the basis of the evidence adduced, wife was entitled to maintenance.

Unfortunately, as in *Elrod I*, this court is unable to assess the claims of error directed to the denial of wife's request for maintenance. In order to address the subject of maintenance, a court must consider the division of property made in the case. This court cannot review the maintenance question absent the trial court's consideration of that question in light of the property division and other relative factors.

The part of the trial court judgment dividing marital property is reversed as is the part of the judgment denying maintenance. In all other respects the judgment is affirmed. The case is remanded with directions, as were heretofore given, "to fully develop the record as to the value of the bank accounts" at the appropriate date, and with that information, together with the information heretofore provided in the previous hearings, to equitably divide and distribute the marital property in this case. The trial court is further directed to consider wife's request for maintenance on the basis of all evidence that is before it. The trial court shall, upon the request by either party, receive additional evidence with respect to the valuation of the parties' bank accounts and may, in the exercise of its sound discretion, receive additional evidence as to the issue of maintenance.

RAHMEYER, P.J., and LYNCH, J., concur.