In re the MARRIAGE OF Valerie ALTERGOTT and John Altergott, III

Valerie Altergott, Petitioner–Respondent,

and

John Altergott, III, Respondent–Appellant.

No. SD 28579.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 6, 2008.

Michael S. Holder, Davis, Susan & Holder, LLC, of Columbia, MO, for appellant.

Michael L. McDorman and J. Aaron Ellsworth, Lake Ozark, MO, for respondent.

GARY W. LYNCH, Chief Judge.

John Henry Altergott, III ("Husband") appeals from the judgment of the trial court dissolving his marriage to Valerie Anne Altergott ("Wife"). Husband asserts five points on appeal.[1] First, Husband contends the trial court's finding that the parties' home is the non-marital property of Wife is against the weight of the evidence. Second, Husband contends the trial court erroneously applied the law in finding a $40,000.00 marital interest in the home, and that this finding is against the weight of the evidence. Third, Husband contends the trial court's finding of the value of Wife's realty business is against the weight of the evidence. Fourth, Husband contends the trial court erred in distributing the parties' debts in that it failed to consider Wife's pre-marital credit card debt. Fifth, Husband contends the trial court's failure to require Wife to reimburse Husband for financial assistance Husband paid to Wife during the pending dissolution action is against the weight of the evidence. We affirm the trial court's judgment.

### Factual and Procedural Background

Wife moved from Kansas City, Missouri to the Lake of the Ozarks in March of 1999 to assist her brother in the operation of his lakefront complex containing a restaurant, nightclub, convenience store, and gas station. Wife was offered a twenty percent ownership interest in her brother's company for agreeing to move to the lake and

---

1. Initially Husband asserted six points relied on, but Husband filed a waiver of his sixth point with this court on June 5, 2008.

manage the operation through the week, as her brother was only able to be there on weekends. Her initial position with the company when she moved to the lake was general manager and vice president. Wife also became the designated broker for her brother's real estate company, as she had been a licensed real estate agent for about seven years.

Wife hired Husband as the restaurant manager for the business, and they became romantically involved in the spring of 1999. In May, Wife moved into a house at the lake that she and her sister and brother-in-law had constructed together. At that time, Husband was living with his parents, and Wife invited him to move in with her. The house was not intended to be a full-time residence; it was intended to be a lake home for Wife to share with her sister and brother-in-law. So, Wife began looking to buy a home in the summer of 1999, once she decided to permanently reside at the lake. Husband assisted her in looking for a home.

Wife entered into a contract for the purchase of a home for $145,000.00 in December of 1999. The total purchase price of the home, with settlement charges, was $147,974.83. Wife paid $17,124.83 in cash and financed the remaining balance with two promissory notes; one for $116,000.00, and one for $14,500.00. Although Husband moved into the house with Wife, the property was conveyed individually to Wife, and she was the only person who signed the two promissory notes and deeds of trust. Wife made the first three mortgage payments on the home without any financial assistance from Husband.

Shortly after buying the house, Wife furnished it by purchasing various pieces of furniture, appliances, and electronics on credit. Husband did not contribute to the purchase of any of those items. Wife never asked Husband to reimburse her for these items, the down payment on the house, or the mortgage payments.

In March of 2000, Husband had quit managing the restaurant and began selling computers. Wife and Husband opened a joint checking account and agreed to each contribute $1,000.00 per month for living expenses. Wife always contributed $1,000.00 per month; Husband did not. Wife used this joint account to pay for the couple's various expenses, including the mortgage payment on the home, utilities, groceries, and Husband's student loan and cell phone service. Wife testified at trial that in most months, the money in their joint account was not enough to cover all of their bills.

Husband proposed to Wife in August of 2000, and they were married on February 17, 2001. Their daughter was born in November of 2002.

The couple made numerous improvements to the home both before and during the marriage. Husband did not make any direct monetary contributions toward the improvements, but he estimated he contributed approximately 245 hours of his labor toward the improvements during the marriage. Wife estimated that approximately $40,000.00 was spent on improvements to the home during the marriage.

Wife refinanced the home in August of 2001. At that time, she borrowed an additional $20,634.00 which was used to pay for a portion of the cost of the home improvements. Wife was the only person who signed the promissory note, in the amount of $152,500.00, and the deed of trust. This note was subsequently refinanced by Wife in January 2005 for the sole purpose of obtaining a better interest rate. The total payoff at that time was $151,000.00. Again, Wife was the only person who signed the promissory note and deed of trust.

At the time of the marriage, Wife had credit card debt of approximately $15,721.00. Of this amount, $8,000.00 was for charges incurred for the parties' wedding and honeymoon. Husband entered the marriage with a student loan and a debt to his parents evidenced by a promissory note. By August of 2001, Wife's credit card debt and the debt to Husband's parents had been completely paid by the parties. However, the parties incurred credit card debt together during the marriage totaling $40,408.00.

In April of 2005, Wife's relationship with her brother had deteriorated, and she ceased working for him in all respects. Her interest of 100 shares in her brother's company was bought back from her for $1.00 per share. Two months later, Wife formed with another person an LLC known as Lake Premier Realty. This company is owned equally by Wife and the other member of the LLC. Wife initially invested $40,000.00 into the company, and her partner invested $20,000.00. Wife borrowed $20,000.00 of her initial investment by taking out a loan against one of her six rental properties she had acquired in Kansas City before she moved to the lake in 1999. Lake Premier Realty incurred a loss of $29,571.00 in 2005. In 2006, the company had a net income of $1,712.33. At the time of trial, Wife estimated that her interest in the company was worth $7,500.00.

Wife and Husband initially separated in December of 2005. After a brief reconciliation, they separated permanently in January of 2006. Husband testified at trial that during the parties' periods of separation up until trial, he had paid to Wife a total of $13,961.00, for both temporary child support and reduction of the parties' credit card debt. Husband requested that the trial court award him half of that amount. The trial court entered its Judgment Entry and Decree of Dissolution on February 21, 2007. Husband appeals.

### Standard of Review

 "In a dissolution proceeding, this Court must affirm the trial court's decree of dissolution unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Holman v. Holman,* 228 S.W.3d 628, 631 (Mo.App.2007). The evidence and all permissible inferences from the evidence are reviewed in the light most favorable to the trial court's decision. *Elrod v. Elrod,* 192 S.W.3d 738, 740 (Mo.App.2006). "On appeal, we defer to the trial court's credibility determinations and the weight assigned to witness testimony." *In re Marriage of Dolence,* 231 S.W.3d 331, 333–34 (Mo.App. 2007). "The trial court is free to believe all, none, or part of the testimony of any witness." *Id.* "[T]he party challenging the dissolution decree has the burden of demonstrating error." *Elrod,* 192 S.W.3d at 740.

The phrase "weight of the evidence" means its weight in probative value, rather than the quantity or amount of evidence. The weight of the evidence is not determined by mathematics, but depends on its effect in inducing belief. An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong.

*Simpson v. Strong,* 234 S.W.3d 567, 578 (Mo.App.2007).

### Discussion

Husband's points on appeal will be discussed out of order for ease of analysis.

### Valuation of Wife's Business

■ In its distribution of property between the parties, the trial court allocated to Wife her interest in Lake Premier Realty and valued that interest at $7,500.00. Husband contends in his third point relied on that the trial court's valuation of Wife's interest in Lake Premier Realty at $7,500.00 was against the weight of the evidence. His sole argument is that the trial court's acceptance of Wife's estimated value "defies logic" and "is so unreasonable and arbitrary as to require remand for the purpose of establishing a value based more accurately upon the evidence before the court."

■ In determining the valuation of property, the trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of property, and when the trial court's determination of value is within the range of evidence the trial court's determination shall not be held erroneous, and the evidence should not be reweighed on appeal. *Kahn v. Kahn*, 839 S.W.2d 327, 336 (Mo.App.1992).

The only evidence presented by Husband on the value of Wife's interest in Lake Premier Realty was his testimony at trial that, in his opinion, "if you invest $40,000, and it's making you money and everybody else money, it's got to be worth more than that the next year.... I know if I spent 40,000, it better be worth 60 [thousand] the next year."

In contrast, Wife introduced into evidence the 2006 Income Statement, the balance sheet, the 2005 tax return, and the operating agreement for Lake Premier Realty. Wife testified that she initially invested $40,000.00, and her partner invested $20,000.00. The documents introduced into evidence showed the business suffered a loss of $29,571.00 in 2005 and gained a profit of $1,712.33 in 2006. Wife further testified that the total assets as of December 31, 2006, were $33,756.90, for

which no depreciation had been taken into account. She explained the transfer restriction from the operating agreement requiring her to sell her interest to her partner, as well as the fact that one of the partners must hold a real estate broker's license, and Wife is the only one who does. Wife testified that she would sell her interest to her partner for $7,500.00 or buy her partner's interest for the same amount.

The trial court's valuation of Wife's interest in Lake Premier Realty at $7,500.00 is certainly within the range of evidence before the court. *Kahn*, 839 S.W.2d at 336. The trial court was entitled to disbelieve Husband's unsupported opinion as to the estimated value and to give more weight to Wife's testimony which was supported by documentary evidence. *Id.* The trial court did not err in valuing Wife's interest at $7,500.00. Husband's third point is denied.

### Wife's Pre–Marital Credit Card Debt

■ Under his fourth point relied on, Husband contends that in distributing the parties' debt, the trial court erred in failing to separate Wife's $15,000.00 of pre-marital credit card debt from the parties' marital debt. Husband argues that he obtained an unjust division of the parties' debt due to this failure because Wife's pre-existing credit card debt was paid using the joint funds of the parties. He further argues that it is "unreasonable and arbitrary" for the trial court to disregard Wife's pre-existing credit card debt while at the same time credit her for the down payment on the house.

■ The trial court is vested with broad discretion in dividing marital debt, and this court will not disturb its division absent a clear showing of an abuse of discretion. *Travis v. Travis*, 163 S.W.3d 43 (Mo.App. 2005).

■ Wife does not dispute that she entered the marriage with $15,000.00 of credit card debt. However, $8,000.00 of that amount was for the parties' wedding and honeymoon. Thus, $8,000.00 of the debt falls within the rule that debt acquired in contemplation of marriage may qualify as marital debt. *Cross v. Cross*, 30 S.W.3d 233, 236 (Mo.App.2000). Wife testified that she alone paid off all of her pre-existing credit card debt within approximately six months after the parties were married. The credit card balance statements offered into evidence support her testimony.

Husband ignores the fact that he also entered the marriage with pre-existing debt. Although no evidence of a specific amount was presented, there is no dispute that Husband entered the marriage with a student loan, and money from the parties' joint checking account was used to pay down that loan. In addition, Husband owed a debt of approximately $6,000.00 to his parents, which was paid in full after the marriage.

The credit card balance statements offered into evidence by Wife indicate that the debt which was divided by the trial court was incurred by the parties during the marriage and was properly divided by the court as marital debt. Husband has not provided any evidence that $15,000.00 of that debt constituted Wife's pre-marital credit card debt. The trial court allocated $292,371.00 of the marital debt to Wife and only $73,751.00 of the marital debt to Husband. Viewing the evidence in the light most favorable to the trial court's decision, as we must, we cannot say that Husband received an unjust allocation of marital debt or that the trial court abused its discretion in dividing the marital debt. *Elrod*, 192 S.W.3d at 740. Husband's fourth point is denied.

### *Funds Husband Paid to Wife During Separation*

■ In his fifth point on appeal, Husband contends the trial court erred in failing to require Wife to reimburse him for funds that he paid to Wife while the dissolution action was pending. Husband asserts the trial court's failure resulted in "fundamental unfairness" to him because "unreasonable and excess sums" were paid by him to Wife "based upon income sworn to by [Wife] and subsequently determined to be materially misrepresented[.]" Husband also alleges that Wife made a "secret transfer of marital funds to her mother" around the time she initiated the dissolution action.

Husband argues he paid Wife a total of $13,961.00 from December 15, 2005 through February 21, 2007, and that he is entitled to credit for his payments because they were based upon Wife's "fraudulent personal pleas for money" and "untruthful and inaccurate signed and verified Income and Expense Statements." He argues that because the court in its judgment ordered him to pay $680.00 per month in child support, his payments of $1,073.92 per month on average to Wife during the pending dissolution action were "overpayments" for which he must be reimbursed.

Husband has not cited any authority in support of his argument that he should be reimbursed for his alleged "overpayments" to Wife during the pending dissolution action, other than a general citation to *Halupa v. Halupa*, 980 S.W.2d 325 (Mo.App.1998), which is not on point with his argument. Husband merely quotes the proposition from *Halupa* that "[a] party is entitled to receive credit against the retroactive award of temporary support for the voluntary amounts paid to the child between the time of separation and the time of trial." 980 S.W.2d at 328. Husband has not explained how this prin-

ciple aids his argument. The trial court in the present case ordered Husband to pay $680.00 per month of child support commencing on March 1, 2007. That award was not retroactive.

"Under Rule 84.04(d) [2] it is an appellant's obligation to cite appropriate and available precedent if he expects to prevail." *Steve Spicer Motors, Inc. v. Gilliam,* 19 S.W.3d 153, 160 (Mo.App.2000). "If no authority is available, an explanation should be made for the absence of citations." *Id.* Where, as here, Husband neither cites relevant authority nor explains why authority is not available, this court is justified in considering his point abandoned. Husband's fifth point is denied.

### Property Classification of House

In his first point relied on, Husband contends the trial court erred in classifying the home as Wife's non-marital property, because: "1) the parties agreed the home was being purchased as a joint residence to be paid for with joint funds; 2) the home was purchased in anticipation of marriage"; and "3) substantial improvements were made to the home during the marriage, to include significant 'sweat equity' by [Husband]."

Section 452.330.1 [3] provides that in a proceeding for dissolution of marriage, the trial court "shall set apart to each spouse such spouse's non-marital property and shall divide the marital property and marital debts in such proportions as the court deems just" after considering the relevant factors set forth in the statute. Marital property is defined as "all property acquired by either spouse subsequent to the marriage," subject to five statutory exceptions, including: "[t]he increase in value of property acquired prior to the marriage . . ., unless marital assets including labor,

have contributed to such increases and then only to the extent of such contributions." Section 452.330.2(5).

In classifying property as marital or non-marital, Missouri courts apply the "source of funds" rule to determine when the property was "acquired." *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 824 (Mo. banc 1984). When the property is acquired through an on-going process of making payments both before and after the marriage, the property may not be wholly marital or non-marital. Using the source of funds rule, the court looks at the source of the funds used to finance the purchase. *Id.* The property is considered to be "acquired" as it is paid for, so that a portion of the property's ultimate value will be marital property. *Id.*

In this case, the trial court applied the source of funds rule to determine that the parties have a $40,000.00 marital interest in the home, and Wife has a $310,000.00 non-marital interest in the home. The court awarded the marital interest in the home to Wife. Likewise, the court found a corresponding $15,000.00 marital encumbrance on the home, and Wife's $131,683.00 non-marital encumbrance, and assigned the marital encumbrance to Wife.

Husband does not challenge the trial court's award of the marital interest in the home to Wife. He contends only that the trial court erred in not classifying the home as being entirely marital. Husband's argument does not follow the three contentions from his point relied on. His argument is: "Because the marital home was never titled in [Husband's] name so as to invoke a presumption of transmutation, the question is either 1) whether there was sufficient commingling of the assets so as to transmute the home to marital proper-

---

**2.** All references to rules are to Missouri Court Rules 2007.

**3.** All references to statutes are to RSMo Cum. Supp.2007.

ty, or 2) whether the property was purchased in contemplation of marriage with the intent that it be marital property." After citing some case law, Husband concludes:

> Either under the theory of transmutation based on continuous commingling of separate and marital property or under the theory of property purchased in contemplation of marriage, the marital home should have been declared marital property. The parties failed to keep their financial affairs separate (mortgage payments were made from joint account, etc.), the property was used as the marital residence into which both parties devoted resources and energy, and [Husband] testified the property was purchased while the couple was cohabitating, and "in anticipation" of marrying and having children.

Husband does not present an argument nor provide any supporting case law for his contentions in the point relied on that "the parties agreed the home was being purchased as a joint residence to be paid for with joint funds" and "substantial improvements were made to the home during the marriage, to include significant 'sweat equity' by [Husband]." Consequently, these contentions are deemed abandoned. *State ex rel. Greene County v. Barnett*, 231 S.W.3d 854, 857–58 (Mo.App.2007). Thus, we need only address the two issues in his point relied on which are supported in his argument: transmutation by commingling and purchase in contemplation of marriage.

■ Where the parties continually commingle marital assets and earnings, and treat property as communal, separate property may be transmuted into marital property. *Cuda v. Cuda*, 906 S.W.2d 757, 759 (Mo.App.1995). "Non-marital property may lose its character as such if there is evidence of an intent to contribute the property to the community." *Id.* However, non-marital property does not become marital property "solely because it may have become commingled with marital property." Section 452.330.4; *D.K.H. v. L.R.G.*, 102 S.W.3d 93, 100 (Mo.App.2003). "Rather, the owner's intent to convert the property to marital property is the determining factor." *D.K.H.*, 102 S.W.3d at 100 (citing *Kinsey–Geujen v. Geujen*, 984 S.W.2d 577, 579 (Mo.App.1999)).

■ Similarly, property is classified as marital if it is purchased in contemplation of marriage and intended to be marital property, even if its acquisition does not meet the strict statutory definition of marital property in section 452.330.2.[4] *Colborn v. Colborn*, 811 S.W.2d 831, 834 (Mo.App. 1991). "However, there must be evidence to support a finding that property was purchased in contemplation of marriage and intended to be marital property." *Id.* at 834–35. "Where there is conflicting evidence about whether property was purchased in contemplation of marriage, the

---

4. Section 452.330.2 provides:

For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
(1) Property acquired by gift, bequest, devise, or descent;
(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;
(4) Property excluded by valid written agreement of the parties; and
(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

trial court's finding will generally not be disturbed." *Id.* at 835.

Here, Wife testified that at the time she purchased the home she and Husband had not yet discussed marriage. Wife decided to reside permanently at the lake and began looking for a home to purchase in June or July of 1999. The home was purchased in December of 1999, and Husband did not propose until August of 2000, eight months after the purchase. Wife testified she and Husband never discussed purchasing a home together at the time she sold her home in Kansas City and began looking for a home to purchase at the lake. She further testified that there was no discussion that the parties owned the house together at the time Wife purchased it, or that they would ever share ownership. The house was titled in Wife's name only, and she alone signed all of the mortgage documents and deeds of trust. Wife never asked or expected Husband to reimburse her for the down payment on the house, the mortgage payments or the home furnishings because she considered it to be her property. Wife testified that when the parties opened the joint checking account to pay for expenses, there was no understanding as to any ownership interest in the home.

Husband testified that the parties "were a couple" and "had talked about getting married" when the parties first looked at the house. However, Wife's testimony disputes Husband's contention that the parties were contemplating marriage. Furthermore, Wife's testimony indicates that she never intended to "contribute the property to the community." We will not disturb the trial court's resolution of this conflicting evidence, as the trial court is in the best position to judge the credibility and weight to be given to witness testimony. *Colborn,* 811 S.W.2d at 835; *Dolence,* 231 S.W.3d at 333–34. The trial court did not err in classifying a partial interest in the home as Wife's non-marital property. Husband's first point is denied.

### Value of the Marital Interest in the Home

In his second point relied on, Husband contends the trial court erred in determining the marital interest in the home was $40,000.00. He contends the judgment erroneously applies the law and is against the weight of the evidence, in that (1) the home should have been classified as marital property, and (2) the trial court did not properly apply the source of funds rule and consider the value of improvements to the home during the marriage and the reductions in the various mortgages from marital funds.

Husband's first contention—the home should have been classified as marital property—is the same contention and argument as advanced by him in his first point and has been determined adversely to him in the immediately preceding discussion on that point. In regard to his contention that the court did not properly apply the source of funds rule, Husband first argues that the court's judgment is against the weight of the evidence because the court did not establish the exact values it used in arriving at its determination of the marital and non-marital interests in the home. However, neither party requested that the court make specific findings of fact as allowed under Rule 73.01(c) upon proper request. Therefore, the trial court was under no obligation to specifically identify the facts it utilized in determining the marital and non-marital interests in the home. *Patterson v. Patterson,* 207 S.W.3d 179, 187 (Mo.App.2006). If no request for findings of fact in accordance with Rule 73.01(c) is made, fact issues upon which no specific findings were made are considered as having been found in accordance with the result reached.

Rule 73.01(c); *Travis v. Travis*, 163 S.W.3d 43, 47 (Mo.App.2005).

 Husband next argues that the trial court erroneously calculated the marital contribution to the home under the source of funds rule, failing to account for the reduction in the mortgages during the marriage or the numerous hours of labor Husband contributed to home improvements. In reviewing the application of the source of funds rule in the instant case and the facts relied upon in such application, we view the evidence in the light most favorable to the trial court's judgment. *Elrod*, 192 S.W.3d at 740; *Travis*, 163 S.W.3d at 47.

The formulas used in calculating the non-marital and marital interests under the source of funds rule are:

Non-marital Property = (nmc/tc) × e, and

Marital Property = (mc/tc) × e

*In re Marriage of Herr*, 705 S.W.2d 619, 625 (Mo.App.1986).

Non-marital contribution (nmc) is defined as the equity in the property at the time of marriage, plus any amount expended after marriage by either spouse from traceable non-marital funds in the reduction of mortgage principal, plus the value of improvements made to the property from such non-marital funds. *Id.*

Marital contribution (mc) is defined as the amount expended after marriage from other than non-marital funds in the reduction of mortgage principal, plus the value of all improvements made to the property after the marriage from other than non-marital funds. *Id.*

Total contribution (tc) is defined as the sum of the non-marital contributions (nmc) and marital contributions (mc). *Id.*

Equity (e) is defined as the equity in the property at the time of distribution. *Id.* In this case, it would be the date of the dissolution judgment. *See id.*

In the case at bar, we first calculate the non-marital contribution (nmc). An appraisal of the home was performed in 2001, around the time of the parties' marriage, valuing the house at $191,000.00. The amount of the mortgage at the time of the parties' marriage was $129, 879.54. Therefore, the equity in the property at the time of marriage was $61,120.46 ($191,-000.00 − $129,879.54). There was no evidence at trial of any non-marital funds expended after marriage on the reduction of mortgage principal or for improvements to the property. Consequently, the non-marital contribution (nmc) is $61,120.46.

We next calculate the marital contribution (mc). For that purpose, given that no non-marital principal reductions in the debt were made after the marriage, the reduction in mortgage principal after marriage equals the difference in the value of the mortgage at the time of marriage and at the time of distribution.[5] In this case, the reduction in mortgage principal will be a negative value because the amount of the mortgage increased after the marriage. The amount of the mortgage at the time of marriage was $129,879.54, and at the time of distribution was $146,683.42. Therefore the reduction in mortgage principal after marriage is −$16,803.88 ($129,879.54–$146,683.42). Wife testified that a total of $40,000.00 was spent on improvements to

---

**5.** In his brief, Husband, without any citation to supporting legal authority, attempts to calculate the principal reduction of each individual payment made during the marriage on the debt against the home, and then uses the sum of such reductions as the marital reduction in principal in his source of funds calculation. Obviously, this calculation by Husband erroneously fails to take into account any increase in the principal of the debt against the home incurred by the parties during the marriage.

the home during the marriage. In viewing the evidence in the light most favorable to the trial court's judgment, we use Wife's testimony regarding the value of improvements and disregard Husband's testimony as to his hours of labor. *Elrod,* 192 S.W.3d at 740. Therefore, the marital contribution (mc) is $23,196.12 (−$16,803.88 + $40,000.00).

The total contribution (tc) is the sum of the non-marital contribution (nmc) and the marital contribution (mc), which is $84,316.58 ($61,120.46 + $23,196.12).

The final variable which must be calculated is equity (e). At trial, Wife offered her expert opinion as an experienced real estate agent that the value of the home at the time of trial was $350,000.00.[6] The value of the mortgage at the time of trial was $146,683.42. Therefore, equity (e) at the time of distribution was $203,316.58 ($350,000.00 − $146,683.42).

Therefore, evaluating the formulas using the calculated values for each of the variables yields the following for the non-marital and marital interests in the home:

Non-marital Property = ($61,120.46/$84,316.58) × $203,316.58 = $147,382.67

Marital Property = ($23,196.12/$84,316.58) × $203,316.58 = $55,933.91.

█ In dividing the marital property and marital debt, the trial court set aside to Wife the marital interest in the home valued at $40,000.00 and ordered Wife to pay the marital portion of the debt against it, which the trial court found to be $15,000.00. After viewing the evidence in the light most favorable to the judgment, we find that these amounts are incorrect in that they are the result of a misapplication of the source of funds rule, as above demonstrated and calculated, and as such, are a misapplication of the law. As demon-

strated above, the proper application of the source of funds rule establishes that the value of the marital interest in the home is $55,933.91, and the amount of the marital portion of the debt on the home is $16,803.88. Thus, the trial court undervalued the martial interest in the home by $15,933.91 ($55,933.91 − $40,000.00) and undervalued the marital debt on the home by $1,803.88 ($16,803.88 − $15,000.00). These errors resulted in a net undervaluation of the marital property and debts set aside to Wife in the amount of $14,130.03 ($15,933.91 − $1,803.88), along with a corresponding overvaluation of the net non-marital property and debt set aside to Wife.

█ "However, trial court error in classifying property is not necessarily prejudicial." *Montgomery v. Montgomery,* 18 S.W.3d 121, 125 (Mo.App.2000) (citing *Spidle v. Spidle,* 853 S.W.2d 311, 316 (Mo.App. 1993)). We will not reverse a judgment unless the trial court error materially affected the merits of the action. Rule 84.13(b); *Montgomery,* 18 S.W.3d at 125.

The trial court's judgment set aside non-marital property and debt to Wife with a net value of $364,338.00 and to Husband with a net value of $6,800.00. The net value of the marital property and debt set aside to Wife was $2,334.00 and to Husband was $17,615. After adjusting for the trial court error in valuing the marital interest in and debt on the home, the net value of non-marital property and debt set aside to Wife decreases to $350,207.97 ($364,338.00 − 14,130.03). Likewise, the net value of the marital property and debt set aside to Wife increases to $16,464.03 ($2,334.00 + $14,130.03). The net values of the non-marital and martial property

---

**6.** Wife's opinion is supported by evidence of an appraisal performed in 2004 valuing the house at $330,000.

and debt set aside to Husband are unchanged.

The net division of martial property and debt by the trial court in its judgment was 11.70% ($2,334.00/($2,334.00 + $17,615.00)) to Wife and 88.30% ($17,615.00/($2,334.00 + $17,615.00)) to Husband. Whereas, the net division of marital property and debt after adjusting for the trial court error in valuing the marital interest and debt in the home results in a 48.3% ($16,464.03/($16,464.03 + $17,615.00)) share to Wife and a 51.69% ($17,615.00/($16,464.03 + $17,615.00)) share to Husband. In both instances, Husband is receiving more than half of the marital estate.

Husband fails to assert that any prejudice to him resulted from the trial court's error. "[I]n order to obtain relief on appeal, Husband must not only demonstrate error, but that the erroneous valuation ... prejudiced him." *Binder v. Thorne–Binder*, 186 S.W.3d 864, 871 (Mo.App.2006) (finding no reason to reverse the judgment because of an improper valuation of wife's separate home that does not materially affect the merits of the divorce action and where the distribution of property was otherwise a fair distribution). "We shall not disturb a trial court's judgment in [a] dissolution of marriage action if there is no showing of prejudice as a result of that judgment." *Id.* (citing Rule 84.13(b) and *LaRocca v. LaRocca*, 135 S.W.3d 522, 524–25 (Mo.App.2004)).

Furthermore, this Court, in *Burk v. Burk*, 936 S.W.2d 144 (Mo.App.1996), deemed appellant's point relied on abandoned where appellant made no claim that the property division was unfair or that misclassification was prejudicial, finding: "Although Husband's point is legally sound, it does not require reversal as he does not contend that he was prejudiced by the error, i.e., that the division was unfair." *Id.* at 146. *Farnsworth v. Farnsworth*, 108 S.W.3d 834 (Mo.App.2003), re-

lied on *Burk* in finding that trial court error in classifying real property as non-marital did not require reversal where "Husband's point relied on claims error in the trial court's classification of real property as non-marital but asserts no prejudice resulting for such an error, nor does his point assert error in the trial court's distribution of assets." *Id.* at 839. *See also Jinks v. Jinks*, 120 S.W.3d 301, 304–05 (Mo.App.2003) (finding that the misclassification of part of the value of marital home as wife's separate property did not render the distribution of property unfair where division was fair and equitable and not unduly weighted in favor of the other party "so as to constitute an abuse of discretion.").

Having failed to allege or demonstrate any prejudice to him as result of the trial court's error in calculating the non-marital and marital interests in the home and the debt against the home, Husband's second point is denied.

### *Decision*

For the foregoing reasons, the judgment of the trial court is affirmed.

RAHMEYER and BURRELL, JJ., concur.