**In The Marriage of Fred A. GLENN, Respondent,**

v.

**Diana R. Moore GLENN, Appellant.**

**No. SD 30829.**

Missouri Court of Appeals, Southern District, Division One.

July 6, 2011.

---

James R. Sharp, Springfield, MO, for Appellant.

Susan Appelquist, Springfield, MO, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Diana R. Moore Glenn ("Wife") appeals the judgment of dissolution entered by the trial court which dissolved her marriage to Fred A. Glenn ("Husband"). In her sole point on appeal Wife challenges the trial court's finding that a home and 77 acres owned by Husband prior to their marriage was entirely Husband's non-marital property. She contends that the trial court erred as a matter of law by its classification since the trial court ignored Wife's marital contribution to the value of the property. We affirm the judgment of the trial court.

Viewing the evidence in the light most favorable to the trial court's judgment, *Hight v. Hight,* 314 S.W.3d 874, 878 (Mo. App.2010), the record reveals Husband and Wife were married on August 15, 1995, and they separated on April 23, 2009.

Husband filed his petition for dissolution on May 5, 2009, and Wife filed her answer and counter-petition on June 3, 2009. There were no children born of the marriage and it was a second marriage for both parties. At the time of trial in March and April of 2010, Husband was sixty-two years old and Wife was sixty years old.

The trial testimony and evidence revealed that after his retirement eleven months into the marriage, Husband began receiving $4,400.00 per month from his retirement pension with the City of Springfield Police Department.[1] Husband also began receiving military retirement benefits in 2007 in the amount of $942.00 per month for his military service prior to the marriage.[2] Husband also worked part-time at a local golf course at which he made approximately $128.62 per month. Additionally, throughout the marriage Husband bought and sold cattle and at the time of trial owned thirty-one cows and calves. All of the money from his pension, his retirement benefits, his wages at the golf course, and his income from his cattle operation went into his solely owned account at Metro Credit Union.

Wife also worked throughout most of the marriage, but she was laid off in January of 2009. All of her wages, unemployment benefits, worker's compensation settlements, profits from the sale of separate real estate and other monies was deposited into her TelComm Credit Union accounts to which Husband had no access. Further, Wife's income taxes for the years 2006 to 2008 show income from a farming operation. Wife also had investments and a 401(K) solely in her name. Husband and Wife never had joint banking accounts and they only filed their income taxes jointly during one year of their marriage. Based

---

1. Wife estimated in her appellate brief that $112.34 of this money is marital in nature.

2. Wife makes no claim to these funds and does not mention them in her brief.

on an apparent understanding that "what's hers is hers and what's [his] is [his]," Husband waived any claim to any of Wife's investments and 401(K).

At the time of the marriage, each party separately owned real property. In 1993, prior to the marriage, Husband purchased 77 acres of land in Lawrence County, Missouri ("the Lawrence County property").[3] He purchased the property for $57,000.00 of which he paid $20,000.00 in cash and borrowed the remaining amount of $37,000.00 from Farm Credit Service. At the time of his marriage to Wife in 1995 he owed between $26,000.00 and $27,000.00 on this loan. Eleven months after the parties' marriage, Husband retired following a twenty-eight year career with the City of Springfield Police Department. The mortgage for the Lawrence County property remained solely in Husband's name as did the deed for the property and all payments on the mortgage were made from his accounts with Metro Credit Union to which Wife had no access. In 1998 Husband paid off the Farm Credit Service mortgage with a lump sum payment from his Metro Credit Union account.

After the parties' marriage, in the spring of 1996, Husband built an $18,000.00 machine shop on the Lawrence County property. He paid for the shop with funds from his Metro Credit Union account. Then, in March of 1996 Husband obtained a $135,000.00 construction loan from First Savings Bank in order to build a home for the parties on the Lawrence County property. Wife also signed the documents for this construction loan which was secured by 20 acres of the Lawrence County property. By December of 1996,

Husband had used funds from his Metro Credit Union account and from the sale of another piece of separate property to pay down the construction loan to $60,000.00 at which time he had it converted to a conventional mortgage in his name only. At the time of trial the balance on this mortgage was approximately $9,000.00 with all of the monthly mortgage payments coming from Husband's Metro Credit Union account. Husband opined that the house, which needed some repairs, and the two acres on which it is located, were worth a total of $110,000.00. While admitting that Wife had done some minor landscaping work such as planting flowers at the house, he related she never contributed financially to the property. He further opined that the entire Lawrence County property complete with outbuildings, home, and 77 acres had a fair market value of between $260,000.00 and $280,000.00.[4]

Prior to the marriage, Wife received as part of her dissolution of marriage settlement with her previous husband several tracts of real estate as well as a contract for deed on a parcel of real estate ("the Greene County property"). The Greene County property consisted of ten acres and a home, and at the time of her 1994 dissolution with her former husband it was valued at $54,500.00 with a $24,000.00 encumbrance in favor of Boatman's Bank. Wife used the settlement from her prior dissolution of marriage to pay off the debt to Boatman's Bank. The contract for deed party then defaulted and in 1996 Wife repossessed the Greene County property. She then re-titled the property solely in her name with no mention of her marital

---

**3.** There was apparently a small shed on the property at the time of its purchase, but it was otherwise unimproved land.

**4.** Wife's expert, Dean Siemer ("Mr. Siemer"), valued the 77 acres at $173,881.00; the ma-

chine shop at $24,025.00; a small shed at $4,869.00; and the house plus two acres at $135,476.00 assuming the home was in good repair.

status.[5] Thereafter, Wife borrowed approximately $30,000.00 to remodel the Greene County property and Husband co-signed on this loan with Commerce Bank.[6] The loan was later increased and Husband also signed those documents. The funds were used to put a new roof on the home as well as new siding, to install hardwood floors, to replace the furnace and air conditioner and make cosmetic alterations. Wife made all of the payments on the Commerce Bank loan out her own separate bank account. In 2003, Wife paid off the Commerce Bank loan with money from a TelComm Credit Union home equity loan she took out in the name: "Diana Moore, A Single Person." Husband was not a signatory to this loan. Husband's expert, Norma Vinson ("Ms. Vinson"), who conducted her appraisal without access to the interior of the house on the Greene County property, testified that the property had a value of approximately $210,000.00, but the property had a present "highest" and "best use" value as a commercial property at approximately $280,000.00.

After hearing the foregoing testimony, the trial court rendered its judgment on August 19, 2010. After considering the factors set out in section 452.330.1,[7] the trial court set out the evidence as it related to both the Lawrence County property and the Greene County property and found that "although it may not be relevant except for consideration of [W]ife's claim of maintenance if the court's use of the source of funds formula is correct," "the value of the Lawrence County [property is] $290,000.00 and the Greene County

[property is] $250,000.00." The trial court then divided the parties personal property and debt per their joint "DR–1 incorporated herein by reference," [8] and then "briefly outline[d] the method used to divide property and determine the amount of a judgment to equitabl[y] divide the property" by setting out the "formula used in calculating the non-marital and marital interest under the source of funds rule...." *See In re Marriage of Herr,* 705 S.W.2d 619, 625 (Mo.App.1986). The trial court then found

[t]his may be an atypical marriage. The parties never commingled funds. Husband and [W]ife each kept separate checking and savings accounts. Income earned by each was deposited in their individual accounts. The lands were never retitled. The parties filed separate income tax returns each year with the exception of one year. Their respective retirement accounts were always separate and never retitled. Wife kept proceeds from her worker's comp[ensation] settlement and [H]usband does not claim any interest in those awards or the second injury proceeding now pending. They both signed debt instruments on the other's property but each paid the respective mortgages from the accounts separately maintain[ed] by each.

Wife did expend some minimum labor on the Lawrence County property planting flowers and wallpapering. Husband mowed and cleaned on the Greene County [property]. The evidence does not lead this court to conclude the labor of either increased the value of the respective properties.

5. Wife utilized the name "Diana Moore" in titling her property. This was the same name she utilized prior to her marriage to Husband.

6. Wife testified that she used approximately $15,000.00 of the loan proceeds to pay off the loan on her car.

7. Unless otherwise stated, all statutory references are to RSMo 2000.

8. As the predominant issues in this appeal relate to the above-referenced real properties, there is no need for us to recite the full division of personal property and debts set out in the judgment.

The court finds no marital contribution by [W]ife to the Lawrence County property and no marital contribution by [H]usband to the Greene County property.[9] Therefore, it is the court's judgment that [H]usband shall be entitled to the described Lawrence County [property] and [W]ife shall be entitled to the described Greene County [property].

In the portion of its judgment entitled "JUDGMENT TO EQUALIZE PROPERTY DIVISION" the trial court stated:

[t]his court has not considered the real property division previously entered in this judgment even though the evidence might justify a finding that each tract is part separate and part marital.

Husband has been awarded mar[it]al personal property with a value of approximately $100,325.00 and ordered to pay debt of $8,900.00. Wife has been awarded personal property of approximately $96,975.00 and ordered to pay debt of $20,875.00. The court enters judgment in favor of [Wife] and against [Husband] for the sum of $7,663.00.

The trial court also denied Wife's request for maintenance and ordered Husband and Wife to pay their respective attorney's fees and costs. This appeal by Wife followed.

Our standard of review in dissolution of marriage cases is the same as that used for any court-tried case: we must affirm the trial court's decree unless it is not supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or misapplies the law. *Vanderpool v. Vanderpool,* 250 S.W.3d 791, 794 (Mo.App.2008); *see also* Rule 84.13(d).[10] The party challenging the decree "has the burden of demonstrating error." *In re Marriage of Taylor,* 244 S.W.3d 804, 808 (Mo.App.2008) (internal quotation omitted). " 'A trial court is free to believe or disbelieve all, part or none of the testimony of any witness.' " *In re Marriage of Pahlow,* 39 S.W.3d 87, 90 (Mo.App.2001) (quoting *In re Marriage of Thompson,* 24 S.W.3d 751, 755 (Mo.App. 2000)).

In her sole point relied on Wife maintains the trial court erred in finding the Lawrence County property "to be entirely Husband's non-marital property as said finding was a misapplication and misstatement of the law and not based on substantial evidence...." She asserts the trial court erred

in that after their marriage, the parties constructed a house on said land with the proceeds of a loan secured by said real estate and paid for by marital funds, including income earned by Husband after the marriage as a result of his employment at a golf course, from the sale of cattle purchased after the marriage, and his police pension, earned in part during the marriage, and therefore the increase in the value of the real estate as a result of the building of this house is marital property under [section] 452.330.2(5).[11]

---

9. We note neither party in this matter requested findings of fact and the trial court did not include in its judgment its calculation under the source of funds formula.

10. All rule references are to Missouri Court Rules (2010).

11. Section 452.330.2 states:
[f]or purposes of sections 452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:
(1) Property acquired by gift, bequest, devise, or descent;
(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
(3) Property acquired by a spouse after a decree of legal separation;

■■■ The trial court is accorded broad discretion in distributing marital property. *Henning v. Henning,* 72 S.W.3d 241, 245 (Mo.App.2002). "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *Rivers v. Rivers,* 21 S.W.3d 117, 123 (Mo.App. 2000). "The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case." *Nelson v. Nelson,* 25 S.W.3d 511, 517 (Mo.App.2000).

■■■ "In a dissolution proceeding, the trial court follows a two-step procedure in dividing the parties' property." *Selby v. Selby,* 149 S.W.3d 472, 482–83 (Mo.App. 2004). Pursuant to section 452.330, "the [trial] court first sets apart to each spouse such spouses' non-marital property and second divides the marital property and debts in such proportions as the court deems just after considering the relevant factors." *Id.* at 483 (internal quotation omitted); § 452.330.1. "[T]he classification of property as marital or non-marital is a question of law . . . ." *In re Marriage of Fisher,* 258 S.W.3d 852, 857 (Mo.App. 2008). "In Missouri, any property acquired after the marriage and prior to legal separation or dissolution is presumed marital property." *Davis v. Davis,* 107 S.W.3d 425, 431 (Mo.App.2003); *see* § 452.330.3. This presumption, however, can be overcome. *Silcox v. Silcox,* 6 S.W.3d 899, 903 (Mo. banc 1999); *see* § 452.330.2.

■■■ The trial court has considerable discretion in its classification of property as marital or non-marital. *Rodieck v. Rodieck,* 265 S.W.3d 377, 380 (Mo.App. 2008). When that discretion is exercised based upon the trial court's determination of credibility, this Court will give deference to that determination. *Hernandez v. Hernandez,* 249 S.W.3d 885, 888 (Mo.App. 2008). "In classifying property as marital or non-marital, Missouri courts apply the 'source of funds' rule to determine when the property was 'acquired.'" *In re Marriage of Altergott,* 259 S.W.3d 608, 616 (Mo.App.2008) (quoting *Hoffmann v. Hoffmann,* 676. S.W.2d 817, 824 (Mo. banc 1984)).

> When the property is acquired through an on-going process of making payments both before and after the marriage, the property may not be wholly marital or non-marital. Using the source of funds rule, the court looks at the source of the funds used to finance the purchase. The property is considered to be 'acquired' as it is paid for, so that a portion of the property's ultimate value will be marital property.

*Id.* (internal citations omitted). In short, the source of funds rule defines the marital interest in non-marital property in the context of value from contribution by expending marital funds for improvements or to reduce debt.

Here, Wife's basic argument is that the trial court erred in classifying the Lawrence County property as a non-marital asset under the source of funds rule. Essentially she maintains the trial court erred in failing to consider that Husband utilized, in part, income earned during the marriage in his payments on and improvements to the Lawrence County property. Correctly noting that income earned during the marriage is typically marital property, *Holman v. Holman,* 228 S.W.3d 628, 632 n. 2 (Mo.App.2007), Wife asserts that

(4) Property excluded by valid written agreement of the parties; and
(5) The increase in value of property acquired prior to the marriage or pursuant to

subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

$112.34 of Husband's monthly retirement benefits were marital property; that all the income he earned from his work at the golf course, approximately $128.00 per month, was marital property; and that any income he received from selling cattle during the marriage was marital property.[12] Thus, she maintains that any funds utilized, which led to an increase in the value of the Lawrence County property, were marital in nature such that marital contributions were made to the Lawrence County property and the trial court erred in finding to the contrary.

Based on its pronouncements found in its judgment, the trial court appears to have ignored the source of funds rule when it determined no marital contribution was made to the Lawrence County property. This is true because the evidence was uncontroverted that Husband earned income during the marriage and that this income was used to pay down the indebtedness and make improvements on the Lawrence County property. As previously related, income earned during the marriage is typically marital property. *Holman*, 228 S.W.3d at 632 n. 2. "[M]arital contribution includes any marital assets which were applied toward the purchase or improvement of the property in question." *Id.* at 639. The trial court's determination to the contrary resulted in a misapplication of the source of funds rule and, as such, constituted a misapplication of the law. *See Altergott*, 259 S.W.3d at 620.

With that being said, Wife is not entitled to a reversal of the judgment of dissolution as " 'trial court error in classifying property is not necessarily prejudi-

cial' " and this Court "will not reverse a judgment unless the trial court error materially affected the merits of the action." *Id.* at 620 (quoting *Montgomery v. Montgomery*, 18 S.W.3d 121, 125 (Mo.App. 2000)). Wife does not allege that the trial court error was prejudicial nor does she "claim that the property division was unfair." *Id.* at 621; *see Burk v. Burk*, 936 S.W.2d 144, 145–46 (Mo.App.1996) (holding that the appellant's point was abandoned where he failed to claim prejudice in misclassification of marital property or that an unfair property division resulted). Further, in her brief and at oral argument Wife failed to show how the source of funds rule should have been applied; what percentage or portion of the Lawrence County property she claimed was, in fact, marital property; and how this misclassification effected the overall division and distribution of the parties' property. Thus, Wife's claim stated in her point relied on would fail regardless of any trial court error in classifying the Lawrence County property. We do not find the division of property in this matter to be so unduly weighted in favor of Husband so as to amount to an abuse of discretion. *See Kirkwood v. Kirkwood*, 77 S.W.3d 675, 680 (Mo.App.2002). Point denied.

The judgment of the trial court is affirmed.

LYNCH, and BURRELL, JJ., concur.

---

12. There was no testimony as to any amount Husband may have earned from his cattle business during the marriage. Presumably such income was reflected on the copies of his income tax returns presented to the trial court; however, those documents were not provided to this Court to review. It was Wife's burden to provide this Court with the documents necessary for a full review of the issues raised. Rule 81.12(a), Missouri Court Rules (2010).