

**In the**
**Missouri Court of Appeals**
**Western District**

| | |
|---|---|
| ANDREA E. STOCKMAN, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | ) **WD85691 Consolidated Case: WD85694** |
| | ) **OPINION FILED:** |
| | ) **AUGUST 1, 2023** |
| BRIAN G. SCHMIDT, JR., | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Two: Alok Ahuja, Presiding Judge,**
**Anthony Rex Gabbert, Judge, Thomas N. Chapman, Judge**

Brian G. Schmidt, Jr. appeals the judgment of the probate division of the Cole County Circuit Court rejecting objections to a final settlement in a minor's estate and ratifying every transaction made by the Conservator. In five points on appeal, he argues that the circuit court erroneously declared and misapplied the law in several ways. The judgment is reversed and remanded.

## Facts

Brian G. Schmidt, Sr. ("Father") died in a car accident in April 1999. His wife, Andrea Schmidt ("Mother"[1]), was seven weeks pregnant at the time of Father's death. Brian G. Schmidt, Jr. ("Son") was born in November 1999.

---

[1] Mother's name changed to Andrea Stockman after she remarried.

Father's estate was distributed to Mother and Son under the laws of intestate succession. Father's estate included an excavating business, money, livestock, real estate in Moniteau County, and an approximately 322-acre farm[2] ("Land" or "the Land") located in Cole County. Mother received a 25% undivided interest in the Land and the rest of Father's assets. Son received a 75% undivided interest in the Land. Son also received Social Security child survivor benefits until he turned 18 years old. In April 2000, when Son was approximately five months old, Mother petitioned for and was granted letters of conservatorship for Son's minor estate. The only asset in the conservatorship was Son's 75% interest in the Land.

Just prior to Son's eighteenth birthday, Mother filed a petition against Son for partition of the Land. In the separate conservatorship matter, Son filed objections to Mother's final settlement. Son petitioned the probate division for an accounting and surcharge, alleging that Mother's final settlement was not just and true. Son also alleged that Mother violated her fiduciary duties to Son. Mother asked the court to ratify all of her transactions with crops, hay, Social Security benefits, timber harvest, and pasture and farmhouse usage. The partition and probate matters were tried on a common record in August 2020 and June 2021. The following evidence was presented:

Mother worked outside the home until the day she delivered Son. She stayed home with Son until he began attending preschool a couple days per week. At that time,

---

[2] Father's parents gave him the Land.

Mother returned to work part-time substitute teaching. Mother married Jim Stockman ("Stepfather") in 2002. They subsequently had two children together.

Crops were planted on part of the Land. Mother did not keep records of the farming activity on an annual basis. Mother kept the receipts and logs which she had provided to her accountant, except for the few years when Son's grandfather helped her with the tax returns. Other than those few years, Mother used the same accountant through Son's eighteenth birthday. Mother did not keep her tax returns from the years 2000 through 2003. She did retain her tax returns for the years 2004 through 2017.

Mother did not keep track of Son's household, food, clothing, or medical expenses. Mother did keep evidence of Son's preschool and childcare expenses. Mother did not maintain a separate bank account for Son's Social Security benefits. She did not keep an itemization of how that money was used. Mother also did not maintain a separate account for farm expenses.

Son attended Blair Oaks school from kindergarten through twelfth grade. He played sports through the YMCA, Parks and Recreation, and Legion Ball. Son played soccer, baseball and football. He also took tennis and swim lessons, as well as gymnastics when he was young. Mother did not keep receipts every time she enrolled Son in an activity or purchased sports equipment. She did keep evidence of monthly membership fees at the YMCA.

3

Mother maintained health insurance for Son. Son had several accidents and was frequently in the emergency room. Mother did not keep track of the expenses involved with maintaining Son's health insurance. Son's health insurance plan had a high deductible and did not cover all of his health expenses. Mother also incurred dental expenses for Son.

Dale Siebeneck, a certified public accountant, reviewed Mother's bank statements, Schedule F from income tax returns starting in 2004, and farm expenses and income beginning in 2004. Siebeneck did not have tax records from 2000 through 2004 so he engaged in an estimation based upon tax returns from 2004 through 2007. Siebeneck calculated the total net profits for the farm operation on the Land and determined that the total cash flow from 2000 through 2017 was $319,827.93. Siebeneck determined that Son's 75% interest in the net profit was $239,870.94.

Siebeneck reviewed documents and analyzed the cost of raising a child. He also analyzed the cash rental rates for pasture and determined that Son was due approximately $1,500 for pasture rent per year. Siebeneck determined that Mother received approximately $178,325 in Social Security payments for Son. Siebeneck calculated the amounts due if Mother had invested the money in Treasury Bills for Son. Siebeneck determined that the total amount owed to Son was $373,750.15.

Siebeneck did not include numerous expenses involved with the farm operation. Some of the expenses not included were for ordinary income tax, fertilizer, farm

4

equipment and the repair of that equipment, and fuel. Siebeneck did not include the costs of maintaining and improving the family home located on the Land.

Mother testified regarding income and expenses related to the Land. She submitted a demonstrative exhibit suggesting that she owed Son $16,430.57. The trial court found in its judgment that "[w]ithout records of all the income and expenses incurred from 2000 to 2018, both the evidence offered by Son and the evidence offered by Mother involved substantial speculation and is not an accurate accounting."

With respect to Mother's petition to partition the Land, the trial court partitioned the Land between Mother and Son. Mother received the house that sits on the Land. With respect to Son's petition for an accounting and breach of fiduciary duty, the trial court made the following relevant conclusions of law:

> Here the court has the power to ratify the transactions of Mother. There was no evidence that Mother frivolously or recklessly engaged in any financial transactions in her role as conservator. Rather, Mother acted in a manner consistent with that of a parent to care for Son, despite the fact that she did not maintain a separate conservatorship account or keep accurate records of every transaction.
>
> The court finds that the Probate Division of this Circuit Court contributed to the situation in which Mother now finds herself by dispensing with an annual settlement as set forth in the docket entry and court order dated April 26, 2000 ….
>
> The Probate Division failed to order Mother to file any annual report contrary to the provisions of Section 475.270 RSMo. The Probate Division's failure to comply with the provisions of Section 475.270 RSMo and order Mother to file an annual report have directly caused or contributed to cause this litigation. Mother now finds herself in a position of having to attempt to locate documents and records covering eighteen years of Son's life in order to essentially re-create eighteen years-worth of annual reports.

5

… This court does not find Mother negligent or at fault in not keeping records as conservator for Son when this Probate Division waived the annual reporting requirement contrary to the provisions of Section 475.270 RSMo and never provided Mother with any instruction or guidance with respect to any responsibility she might have to account for any activity associated with the Land. This court does not find a breach of fiduciary duty.

This court chooses to exercise its equitable jurisdiction and ratify the transactions of Mother in her role as a conservator for Son under its powers conferred by Section 475.260 RSMo and Section 475.091 RSMo. In doing so, the court finds that Son has not been harmed by the transactions of Mother. The value of a mother's care cannot be reduced to an hours and dollar determination and Son cannot demonstrate with any credible evidence that Mother profited or that he did not reap the sufficient benefit. The only asset Son received as a result of the tragic and unexpected loss of his father was a seventy-five percent interest in the real estate. Son's original seventy-five percent interest in the land still exists today; the land was preserved by Mother. The Cropland, comprising the most valuable portion of Son's interest in the land, was maintained and preserved by Mother. Mother maintained the Cropland by continuing to plant crops and fertilize the soil. No evidence was presented that Mother has accumulated savings or investments as a result of planting crops. In other words, there is no United States currency that either party can point to and claim the currency was profit from farming that cropland that exists today. Mother continued to live a modest life-style, including, but not limited to, continuing to reside in the same house, on the same land, as when Son was born. Section 475.091 RSMo does not require this court to perform an actual accounting in order to ratify Mother's actions and transactions. The parties certainly put effort into attempting to locate documents and re-create eighteen years' worth [of] transactions, but there are years where no information was available which results in assumptions and speculation. In exercising its equitable powers, this court offsets Mother's attorney fees and expenses in the partition against Son's accounting claims. The court makes no monetary award to either party. Each party shall be responsible for his or her own attorney fees and expenses.

This appeal by Son follows.[3]

---

[3] The partition of the Land is not challenged on appeal by either Mother or Son. Mother did not file an appeal and did not file a Respondent's brief in this case.

## Standard of Review

"In probate matters, the judges serving in probate divisions of circuit courts have general equitable jurisdiction." *Est. of Grass v. Downey*, 880 S.W.2d 567, 568 (Mo. App. E.D. 1994) (citing section 478.260). "However, they also possess implied powers as may be necessary and essential to the exercise of the expressly granted statutory powers." *Id*.

"A court-tried probate case is reviewed under the standard of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *Est. of Powell v. Roper*, 245 S.W.3d 280, 282 (Mo. App. W.D. 2008) (internal quotation marks omitted). "Under that standard, the probate court judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id*. (internal quotation marks omitted). "The evidence and all permissible inferences from the evidence are reviewed in the light most favorable to the trial court's decision." *In re Marriage of Altergott*, 259 S.W.3d 608, 613 (Mo. App. S.D. 2008). "On appeal, we defer to the trial court's credibility determinations and the weight assigned to witness testimony." *Id*. (internal quotation marks omitted). "The trial court is free to believe all, none, or part of the testimony of any witness." *Id*. (internal quotation marks omitted).

"Deference is paid to the trial court's factual determinations, but this Court reviews *de novo* both the trial court's legal conclusions and its application of law to the

facts." *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013).

"The phrase 'weight of the evidence' means its weight in probative value, rather than the quantity or amount of evidence." *Altergott*, 259 S.W.3d at 613 (internal quotation marks omitted). "The weight of the evidence is not determined by mathematics, but depends on its effect in inducing belief." *Id*. (internal quotation marks omitted). "An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong." *Id*. (internal quotation marks omitted).

## Point I

In his first point on appeal, Son claims the circuit court erroneously declared and misapplied the law in determining that Mother did not breach any fiduciary duties as conservator. He states that section 475.130[4] and caselaw state that conservators have

---

[4] All statutory references are to RSMo 2016 as supplemented through the date Son turned 18 years old in November 2017 unless otherwise indicated. Section 475.020 states:

> The provisions of chapter 472, unless therein restricted to decedents' estates, apply to guardianships and conservatorships. Where sections in chapter 473 are specifically incorporated by reference by any provision of sections 475.010 to 475.370, they shall be applied as if "decedent" or "deceased" read "ward" or "protectee", "executor" or "administrator" or "personal representative" read "guardian", "conservator" and the like, as the case may be, as far as applicable to guardianships and conservatorships and not inconsistent with the provisions of sections 475.010 to 475.370. In other cases, where no rule is set forth for guardianships and conservatorships in sections 475.010 to 475.370, the rule regarding decedents' estates in this law shall likewise apply to guardianships and conservatorships when applicable thereto and not inconsistent with the provisions of sections 475.010 to 475.370, unless a contrary rule of court is duly promulgated or declared; provided that the provisions of sections 473.780 to 473.840, relating to independent administration, shall not apply to guardianships or conservatorships.

duties to protect, preserve, and manage the estate of a minor, to account for it faithfully, take possession of income of the property, and to keep the protectee's property separate from the conservator's property. Son argues it was uncontroverted that Mother saved none of Son's Social Security benefits for him, saved none of the Land income for him, withdrew his savings account funds prior to his 18th birthday, did not account for her use of Son's funds, and commingled Son's Social Security benefits and crop income funds with Mother's and Stepfather's funds in the same bank account.

Section 475.030.2 states in relevant part that "[l]etters of conservatorship of the estate of a minor shall be granted for that part of the estate of the minor which is not derived from a living parent who is acting as natural guardian." Section 475.130, pertaining to the general duties and powers of a conservator of an estate, states in relevant part:

> 1. The conservator of the estate of a minor or disabled person shall, under supervision of the court, protect, preserve and manage the estate, apply it as provided in this code, account for it faithfully, perform all other duties required of the conservator by law, and at the termination of the conservatorship deliver the assets of the protectee to the persons entitled thereto. In protecting, preserving and managing the estate, the conservator of the estate is under a duty to use the degree of care, skill and prudence which an ordinarily prudent person uses in managing the property of, and conducting transactions on behalf of, others. If a conservator of the estate has special skills or is appointed on the basis of representations of special skills or expertise, the conservator is under a duty to use those skills in the conduct of the protectee's affairs. A conservator of the estate is under a duty to act in the interest of the protectee and to avoid conflicts of interest which impair the conservator's ability so to act.

9

2. The conservator of the estate shall take possession of all of the protectee's real and personal property, and of rents, income, issue and profits therefrom, whether accruing before or after the conservator's appointment, and of the proceeds arising from the sale, mortgage, lease or exchange thereof. Subject to such possession, the title to all such estate, and to the increment and proceeds thereof, is in the protectee and not in the conservator. Upon a showing that funds available or payable for the benefit of the protectee by any federal agency are being applied for the benefit of the protectee, or that such federal agency has refused to recognize the authority of the conservator to administer such funds, the court may waive, by order, the duty of the conservator to account therefor.

…

5. A conservator of the estate has power, without authorization or approval of the court, to:

(1) Settle or compromise a claim against the protectee or the estate agreeing to pay or paying not more than one thousand dollars;

(2) Settle, abandon or compromise a claim in favor of the estate which does not exceed one thousand dollars;

(3) Sell, or agree to sell, chattels and choses in action reasonably worth not more than one thousand dollars for cash or upon terms involving a reasonable extension of credit;

(4) Exchange, or agree to exchange, chattels and choses in action for other such property of equivalent value, not in excess of one thousand dollars;

(5) Insure or contract for insurance of property of the estate against fire, theft and other hazards;

(6) Insure or contract for insurance protecting the protectee against any liability likely to be incurred, including medical and hospital expenses, and protecting the conservator against liability to third parties arising from acts or omissions connected with possession or management of the estate;

(7) Contract for needed repairs and maintenance of property of the estate;

(8) Lease land and buildings for terms not exceeding one year, reserving reasonable rent, and renew any such lease for a like term;

(9) Vote corporate stock in person or by general or limited proxy;

(10) Contract for the provision of board, lodging, education, medical care, or necessaries of the protectee for periods not exceeding one year, and renew any such contract for a like period;

(11) On or after August 28, 2009, invest the estate in accordance with the provisions of section 475.190.

10

6. If, in exercising any power conferred by subsection 5 of this section, a conservator breaches any of the duties enumerated in subsection 1 of this section, the conservator may be surcharged for losses to the estate caused by the breach but persons who dealt with the conservator in good faith, without knowledge of or reason to suspect the breach of duty, may enforce and retain the benefits of any transaction with the conservator which the conservator has power under subsection 5 of this section to conduct.

"The conservator of a minor or adult protectee is in a fiduciary relationship with the protectee." 5D Mo. Prac., Probate Law & Practice § 2026 (3d ed.). "It is the duty of the conservator to preserve the identity of the protectee's estate." *Id*. "If a conservator commingles the assets of his protectee with those of his own, he is absolutely liable for his protectee's assets." *Id*; *see also Park Bank v. Yerington*, 275 S.W. 970, 972 (Mo. App. 1925) ("We think there is no question but that defendant should not have had these bonds registered in his own name, and, however honest his intention might have been, he was guilty of a breach of trust."); *Berry v. Berry*, 218 S.W. 691, 692 (Mo. App. 1920) ("The law plainly requires and such is the law in reference to trust funds generally that the guardian handle the funds of the ward as a separate trust fund preserving its identity as such, and not mingling or using it with any other fund."); *In re Ermeling's Est.*, 131 S.W.2d 912, 916 (Mo. App. 1939) ("The practice of a curator borrowing money from his ward's estate should be condemned, not only because it is not in accord with the law, but because it would often be abused to the detriment and loss of the estate."). "Although the obligation to keep the protectee's property separate has its roots in the common law, the 2018 Guardianship Code Revision emphasizes the importance of this obligation by

11

enacting a statutory requirement, copied from the Missouri Uniform Trust Code." 5D

Mo. Prac., Probate Law & Practice § 2026 (3d ed.). Section 475.342 became effective on

August 28, 2018, after Son turned 18 years old. It states in relevant part that conservators

"shall: (1) Keep estate property separate from the conservator's own property; and (2)

Cause the estate's property to be designated so that any ownership interest of the estate,

to the extent feasible, appears in records maintained by a financial institution or party

other than the conservator or protectee."

Son asserts that Mother received $178,325 in Social Security child survivor

benefits for Son. It was uncontroverted that Mother did not segregate or save any of

those benefits for Son. Instead, Mother had the benefits deposited into the Jefferson

Bank account that was in her name and then later in Mother and Stepfather's names.

Mother did not keep an accounting pertaining to the Social Security benefits.

With respect to the Land, the trial court found:

> The only asset Son received as a result of the tragic and unexpected loss of his father was a seventy-five percent interest in the real estate. Son's original seventy-five percent interest in the land still exists today; the land was preserved by Mother. The Cropland, comprising the most valuable portion of Son's interest in the land, was maintained and preserved by Mother. Mother maintained the Cropland by continuing to plant crops and fertilize the soil.

Mother and Son held the Land as tenants in common. "Tenants in common have many

… rights in the property, including the right … to receive a portion of any income

produced from it." *U.S. v. Craft*, 535 U.S. 274, 280 (2002).

12

It was uncontroverted that the Land produced annual income. This included part of the profits of a sharecrop arrangement, governmental agricultural payments, cooperative distributions, and the sale of timber. It was also uncontroverted that the Land had expenses and taxes associated with producing that income. As a tenant in common with a 75% interest in the Land, Son was entitled to 75% of the profits from the Land once all expenses were paid.

Mother did not keep records pertaining to income and expenses from the Land from 2000-2003. She and Stepfather did keep them as part of their tax records from 2004-2017. Mother deposited all crop profits into the Jefferson Bank account that was in her name and later her and Stepfather's name. In his brief, Son claims that his portion of profit earned from the Land amounts to $151,472.83.

It was also uncontroverted that two months before Son's 18th birthday, Mother withdrew $3,416.76 from a certificate of deposit that was intended to be a savings account for Son. In so doing, Mother incurred an early withdrawal penalty. Mother testified that she withdrew the money to keep Son from spending it in a way she did not approve of once he had access to it. She had the funds in a safe at her home. Mother failed to keep the funds in an interest bearing account and failed to turn them over to Son at the conclusion of her conservatorship.

The trial court erroneously declared and misapplied the law when it found that Mother did not breach her fiduciary duties as Son's conservator. The point is granted.

**Point II**

13

In his second point on appeal, Son claims the circuit court erroneously declared and misapplied the law and abused its discretion in excusing Mother's actions as conservator based on the probate court's prior order dispensing with annual settlements and not having instructed Mother about her duties as conservator. He states a conservator's duties under section 475.130 to collect, preserve, invest, and account for the estate, as well as to make a final settlement pursuant to section 475.290 are independent of any annual settlement obligations. He further states there is no requirement that a court instruct a conservator about their duties and all persons are presumed to know the law. Son argues that the equities are not on Mother's side in that Mother had counsel to advise her from the beginning to the end. Further, she was a college graduate and capable of performing her duties as a conservator, while her protectee Son was an infant wholly at the mercy of his conservator to protect his interests.

Section 475.270, pertaining to annual settlements, states in relevant part:

1. Every conservator shall file with the court a settlement of his accounts once a year or oftener if required by the court. The annual settlement shall be made at a time fixed by the court within thirty days after the anniversary of the appointment of such conservator and on the corresponding date of each year thereafter until the final settlement.

2. Each settlement of a conservator shall conform to the requirements of section 473.543 as to settlements in decedents' estates.

3. If the conservatorship estate meets the indigency standards prescribed by chapter 208, or if the assets of a protectee have been placed in restricted custody, the court may waive the requirements of subsection 2 of this section and require the conservator to report, in a form prescribed by the court, the following information:

(1) A statement of any money or property received during the preceding year including the date, source and amount or value;
(2) A statement of disbursements made and the purpose thereof;
(3) The total amount of money or property on hand;
(4) The name and address of any depositary where estate funds are deposited and the amounts thereof.

"The provisions of the statute permitting the waiver of formal settlement accounting is a statutory recognition of the custom of 'no further process' that has been employed by probate judges throughout the state for years." 5D Mo. Prac., Probate Law & Practice § 2069 (3d ed.). "The philosophy of no further process is to effect economies in the expenses of administration" in certain situations. *Id*. One of those situations is "where the assets of the estate consist solely of government entitlements for an indigent protectee and virtually all of the income is dedicated to the payment of the monthly expenses for the support and maintenance of the protectee." *Id*. Another situation is where an estate has assets that consist of certificates of deposit or federal securities. *Id*. "In such cases, each account is insured or guaranteed by the credit of the United States so that there is no risk that the value of the investment will be diminished because of changes in market conditions." *Id*.

When Mother was appointed conservator in 2000, the court made a docket entry dispensing with the annual settlement requirement. She did not file any annual settlements with the court while she was Son's conservator. There is no evidence that Son was indigent, and Son's estate was comprised of more than certificates of deposit or

federal securities. The trial court in this case found in its judgment that it was an error to dispense with annual settlements for Son's estate.

Section 475.083.1(1), pertaining to the termination of conservatorship, states in relevant part that "[t]he authority of a guardian or conservator terminates … [w]hen a minor ward becomes eighteen years of age…." "Notwithstanding the termination of the authority of a conservator, he shall continue to have such authority as may be necessary to wind up his administration." § 475.083.3. Section 475.290, regarding the final settlement, states in relevant part:

> 1. Conservators shall make final settlement of their conservatorship at a time fixed by the court, either by rule or otherwise, within sixty days after termination of their authority. For the purpose of settlement, the conservator shall make a just and true exhibit of the account between himself and his protectee, and file the same in the court having jurisdiction thereof, and cause a copy of the account, together with a written notice stating the day on which and the court in which he will make settlement, to be delivered to his protectee or, in case of revocation or resignation, to the succeeding conservator or in case of death of his protectee to his executor or administrator or other person designated by the court, at least twenty days before the date set for settlement.
> ….

Section 473.543, pertaining to settlements, states in relevant part:

> 1. Each settlement filed by a personal representative shall state the period for which it is made and, among other things, shall contain a just and true account of all moneys collected by such personal representative, the date when collected, from whom collected and on what account collected, whether on claims charged in the inventory or for property sold or otherwise; and it shall show the exact amount of principal and interest collected on each claim, and also the amount and date of each expenditure or distribution, and to whom and for what paid. Such settlement shall also show what interest has been obtained by the personal representative upon

16

any funds in his or her hands, and when obtained, on what amounts, for what time and at what rate percent. Each expenditure of more than seventy-five dollars for which a personal representative claims credit in any settlement shall be supported by vouchers executed by the person to whom the disbursement was made or other documentation, such as an electronic copy of a check or a bank statement, which establishes to the court's satisfaction that the payment claimed in the settlement was actually made to the payee to whom it is claimed to have been made. The court has discretion to require documentation for expenditures of less than seventy-five dollars. Every settlement shall be signed by the personal representative.

….

"[A]n annual settlement is a tool to monitor the estate's earnings and expenditures, and, consequently, the guardian's performance." *Powell*, 245 S.W.3d at 286 (internal quotation marks omitted). The probate court's dispensation of the annual settlement requirement in April 2000 was not also a dispensation of the final settlement requirement. Those are two separate requirements mandated by two separate statutes.

Mother did not keep accurate records regarding the income and expenses associated with Son's estate. Because of this, the trial court found that the evidence offered by Son and the evidence offered by Mother involved substantial speculation and is not an accurate accounting. Mother could not provide the detailed final settlement required by statute.

> [C]onservators are not held to a standard of strict liability in light of the provisions of § 475.130.1, which requires that a conservator use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others, and § 475.132.2, which imposes individual liability on a conservator "only if he is personally at fault."

*Id.* (internal quotation marks omitted). "[T]he proper standard for conservators is one which requires some fault or negligence on the part of the conservator before liability will be imposed." *Id*. (internal quotation marks omitted).

The trial court found that the probate division contributed to Mother's failure by dispensing with the annual settlement requirement. The trial court held that this is why Mother did not keep any of the necessary records. The trial court further excused Mother because the court never provided Mother with instruction and guidance with respect to the responsibilities a conservator has under the law. It concluded that Mother was not negligent or at fault.

After Father's death, Mother petitioned the court to be conservator of Son's estate. She was appointed as such in April 2000. Mother had a college education, had kept financial records for Father's excavating business, and presumably understood enough about being a conservator to know to petition to be one. She was represented by counsel when she petitioned to be Son's conservator. She testified that she knew a conservator holds money and property that belong to someone else.

There is no requirement in Chapter 475 that the court must instruct conservators regarding their duties under the law. To the contrary, people are "conclusively presumed to know the law." *In re Est. of Glover*, 996 S.W.2d 559, 563 (Mo. App. E.D. 1999) (rejecting an argument claiming ignorance of the law as a defense in the context of an appellant not knowing he was required to file a notice in the probate division within a six months' timeframe). A "lack of understanding of the law's requirement …. could have

18

been ascertained from a reading of the statutes and pertinent cases." *Id*. (internal quotation marks omitted).

While the probate division dispensed with the requirement of annual settlements, it did not dispense with the other duties of a conservator including the requirement to not comingle assets and the requirement of accurate record keeping. Those duties are required by statute. Mother's ignorance of the law is not a defense. In excusing Mother's actions as a conservator, the trial court erroneously declared and misapplied the law.

In its judgment, the circuit court complained that, "[w]ithout records of all the income and expenses incurred from 2000 to 2018," an accurate accounting could not be conducted without "substantial speculation." As we have explained, Missouri's conservatorship statutes placed an obligation on Mother to maintain accurate records concerning Son's estate. Missouri law is clear that "'one whose wrongful conduct has rendered difficult the ascertainment of damages cannot escape liability because the damages cannot be measured with exactness.'" *Claas v. Miller*, 806 S.W.2d 141, 145 (Mo. App. W.D. 1991) (internal quotation marks omitted). More generally, "'the modern emphasis on the requirement that damages be shown with certainty is on the fact of damages and not on the particularized amount." *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214, 236 (Mo. App. E.D. 2017) (internal quotation marks omitted). "Once the fact of damages has been established, we require a lesser degree of certainty as to the amount of damages, and we allow the [fact-finder] to exercise a greater

19

degree of discretion in assessing that amount." *Id*. The fact that Mother's poor record-keeping may make it difficult to determine the precise amount owing to Son cannot inure to her benefit, or deny Son the recovery to which he is legally entitled.

The point is granted.

### Point III

In his third point on appeal, Son claims the circuit court erroneously declared and misapplied the law in permitting use of Son's funds for his basic support. He states that a parent has a common law obligation to provide support for a child and a stepparent has an obligation to provide support pursuant to section 453.400, and both caselaw and section 475.125 require enforcement of support obligations when determining whether a protectee's funds may be invaded for basic support and education. Son argues that it was uncontroverted that Mother and Stepfather together had adequate income from their wages and cattle business and reduced living expenses such that they were fully capable of providing basic support for Son consistent with the support they provided their other children from at least 2004 to 2017 .

"[I]t is well settled that every parent has an obligation to support his or her child as fully as his or her means will allow." *Matter of B.S.R.*, 965 S.W.2d 444, 449 (Mo. App. W.D. 1998). "A stepparent shall support his or her stepchild to the same extent that a natural or adoptive parent is required to support his or her child so long as the stepchild is living in the same home as the stepparent." § 453.400.1. Section 475.125, pertaining to the support and education of protectees, states in relevant part:

20

1. The court may make orders for the management of the estate of the protectee for the care, education, treatment, habilitation, respite, support and maintenance of the protectee and for the maintenance of his or her family and education of his or her children, according to his or her means and obligation, if any, out of the proceeds of his or her estate, and may direct that payments for such purposes shall be made weekly, monthly, quarterly, semiannually or annually.  The payments ordered under this section may be decreased or increased from time to time as ordered by the court.

2. Appropriations for any such purposes, expenses of administration and allowed claims shall be paid from the property or income of the estate.  The court may authorize the conservator to borrow money and obligate the estate for the payment thereof if the court finds that funds of the estate for the payment of such obligation will be available within a reasonable time and that the loan is necessary.  If payments are made to another under the order of the court, the conservator of the estate is not bound to see to the application thereof.

3. *In acting under this section the court shall take into account any duty imposed by law or contract upon a parent or spouse of the protectee, a government agency, a trustee, or other person or corporation, to make payments for the benefit of or provide support, education, care, treatment, habilitation, respite, maintenance or safekeeping of the protectee and his or her dependents.*  The guardian of the person and the conservator of the estate shall endeavor to enforce any such duty.

(Emphasis added).

Where the guardian and conservator is the same person and where, as happens in many instances, the conservator is a parent of the child, it is the duty of the court to determine whether the parent possesses sufficient financial resources to support the protectee and, if so, to disallow charges against the estate for ordinary support and maintenance.

Where the parents are impoverished, the protectee's funds may be used for the child's support.

5D Mo. Prac., Probate Law & Practice § 2045 (3d ed.).

"The Guardianship Code Revision of 1983 added a provision to V.A.M.S. § 475.265, stating: 'The court may consider ties of blood, marriage or adoption, in making allowances of compensation to guardians and conservators.'" 5D Mo. Prac., Probate Law & Practice § 2088 (3d ed.).

> The rationale for the added language is found in the Committee Comment: "As modified, the amendment expresses a policy that guardians and conservators should not be allowed compensation for services to the ward or protectee if the law imposes an independent duty upon the person, who happens to be the guardian or conservator, to provide such services. Thus, a parent-conservator should not be compensated for the time devoted to arranging for his child's necessary medical care notwithstanding that part of all of the expense may be paid from the child's estate due to the parent's financial inability to pay."

*Id*.

Section 475.130.2, pertaining to the general duties and powers of a conservator of an estate, states in relevant part that "[u]pon a showing that funds available or payable for the benefit of the protectee by any federal agency are being applied for the benefit of the protectee … the court may waive, by order, the duty of the conservator to account therefor." This court, however, has specifically held that a child's receipt of federal survivor benefits does not discharge a parent's support obligation.

> It is well settled in this jurisdiction, as well as elsewhere, that a father is bound to support his minor children, if able to do so, even though they have property of their own. The only exception to this rule is where, under a trust, will or agreement, a fund is created for the express purpose of maintenance and education of the minor child or children. In such cases, the application of the property or income for that purpose must be made without regard to the ability of parents to support said minors. But such is not the situation in the case at bar. The record shows that [the child] is

22

receiving the sum of $116.50 per month from the Federal Government as compensation for the death of his natural father while in the armed services. There is nothing in the Act of Congress creating this right to compensation which makes it mandatory that the payments received be applied to maintenance and support. Such being the case, *the [child's adoptive father] may not insist that any part of the money so received be used to relieve him of his primary duty to support his minor child, if his own means are adequate for that purpose.*

*Slaughter v. Slaughter*, 313 S.W.2d 193, 196 (Mo. App. 1958) (internal citations omitted) (emphasis added).

This approach is consistent with cases from outside jurisdictions that have considered this issue. In *McKelvey v. Doochack*, 96-10394, 1997 WL 295711, at *2 (Del. Fam. Mar. 21, 1997), the children resided with a third party and that party received Social Security death benefits on behalf of the children as a result of their biological mother's death. The children's father and adoptive mother argued "that the Court should determine an appropriate amount of support needed to raise the children and determine the appropriate amount each parent should pay after taking into consideration the amount of the Social Security benefits which the children receive." *Id.* In rejecting that argument, the court stated:

> Courts which have considered this issue have almost consistently held that death benefits should not be credited against a living parent's child support obligation. *See, Cabell v. Short,* Del.Fam., File No. CN94-09489, Tumas, J. (Oct. 29, 1996) [biological mother was not entitled to dollar-for-dollar credit for Social Security death benefits received by children in stepmother's custody from their biological father's death]; *County of Napa v. Combs,* Cal. Ct.App., 222 Cal.App.3d 1077, 272 Cal.Rptr. 282 (1990) [father of child in foster care not entitled to credit toward his child support obligation for Social Security benefits received by county upon death of

23

child's mother]; *In re Marriage of Foley,* Iowa Supr. Ct., 501 N.W.2d 497 (1993) [income child receives from Social Security as beneficiary of deceased father not available for offset against adoptive parent's support obligation]; *In the Matter of the Marriage of Beacham,* Kan. Ct.App., 19 Kan.App.2d 271, 867 P.2d 1071 (1994) [adoptive father's duty to support his child is not relieved because of payments received by child which are in no way attributable to him.] It is generally recognized that gratuitous contributions from relatives, friends, charities, governmental agencies or a stepfather will not reduce or diminish a parent's obligation to furnish child support. *See, Traylor v. Burns,* Me.Supr. Ct., 570 A.2d 1204 (1990) [father not entitled to credit for Social Security death benefits received by child on behalf of her deceased stepfather]; *Slaughter v. Slaughter,* Mo. Ct.App., 313 S.W.2d 193 (1958) [adoptive father riot relieved of duty to support minor child where child received compensation for the death of his natural father]; *Jensen v. Bowcut,* Utah Ct.App., 892 P.2d 1053 (1995) [trial court not required to offset Social Security benefits received by child as a result of mother's death from father's child support obligation where child resides with maternal grandmother]. *But see, Corley v. Corley,* La. Ct.App., 600 So.2d 908 (1992) [Veterans Administration and Social Security benefits paid to child after death of biological father were "income" to child and should not be included in wife's gross income for purposes of computing child support, but child's income can negate father's obligation].

*Id*.

In *Truman v. Truman*, 642 N.E.2d 230, 232 (Ind. App. 4th Dist. 1994), a father appealed the amount of child support awarded to his second wife to support his children he had with his deceased first wife. The trial court calculated the father's support obligation and then subtracted the Social Security benefits the children receive on behalf of their deceased mother from father's obligation to support them. *Id*. In discussing whether the father's support obligation could be offset by Social Security death benefits, the Indiana Court looked at cases from other jurisdictions and determined that the father's support obligation could not be offset by the children's Social Security benefits. It stated:

> The Kansas Court of Appeals recently addressed a similar issue in *In re Marriage of Beacham* (1994), 19 Kan.App.2d 271, 867 P.2d 1071. In *Beacham,* an adoptive father argued that Social Security death benefits that his daughter received as a result of her natural father's death should offset the adoptive father's support obligation. The court first found that the adoptive father had a duty to support his adopted child. *Id.* The court further found that the social security benefits did not relieve the adoptive father's duty to support the child because the payments received by the child were in no way attributable to him. *Id.* The court also cited decisions from other jurisdictions which are consistent with this result. *See In re Marriage of Foley* (1993), Iowa, 501 N.W.2d 497 (social security benefits payable to adopted children on behalf of their deceased natural father could not offset child support payments owed by adoptive father); *Traylor v. Burns* (1990), Me., 570 A.2d 1204 (father was not entitled to a credit for social security death benefits received by the child on behalf of her deceased stepfather).
>
> In a similar case, the Oklahoma Court of Appeals found that a court order offsetting an adoptive father's support obligation by social security death benefits which the child received on behalf of her deceased natural mother was erroneous because it required the child to support herself. *Graham v. Graham* (1988), Okla.App., 761 P.2d 1298, 1298.

*Id*. at 236-37. The court noted that the father had a duty to support his two children and that the Social Security payments the children received were not attributable to the father. *Id*. at 237.

In *Gambill v. Gambill*, 137 P.3d 685, 687 (Okla. App. Div. 2 2006), a father petitioned for divorce. He and his wife had two adopted children. *Id*. The children received an adoption subsidy and Social Security survivors benefits. *Id*. In awarding the mother child support, the trial court did not include the adoption subsidy or Social Security benefits. *Id*. The father appealed. *Id*. The Oklahoma court found that the

25

adoption subsidy and Social Security benefits were income attributable to the children.

*Id*. at 690-91.  It went on to state:

> Having found that the adoption subsidy and survivors' benefits are income attributable to the children, we also recognize that Section 118 makes no provision for considering the income or resources of the child when computing child support.  The trial court, under 43 O.S. Revised Supp.2005 § 118(E)(1), must compute child support "as a percentage of the combined gross income of both parents," and the only relevant gross incomes are those of Mother and Father.
> Gross income includes earned and passive income, except income specifically excluded under Section 118(E)(2)(b)(1), which excludes child support received for children not before the court.  Gross income also does not include "benefits received from means-tested public assistance programs including, but not limited to: (a) Temporary Assistance for Needy Families (TANF), (b) Supplemental Security Income (SSI), (c) Food Stamps, and (d) General Assistance and State Supplemental Payments for Aged, Blind and the Disabled." 43 O.S. Revised Supp. § 118(E)(2)(b)(2).
> Neither the adoption subsidy nor the social security survivors' benefits is based on the income or means of Mother or Father.  The subsidy and survivors' benefits are not specifically excluded from inclusion as gross income by subsection (b).  However, the benefits also do not fit into any classification of income under the terms of the parents' earned or passive income.  Because the adoption subsidy and social security survivors' benefits are not income attributable to the parents but income of the children not specifically addressed in Section 118, we must conclude that neither the adoption subsidy nor the social security survivors' benefits can be considered in the income attributable to Mother for the purpose of calculating child support.

*Id*. at 691.  The appellate court affirmed the trial court's actions of not considering either

benefit in the child support computation.  *Id*. at 692.

Son argues on appeal that the evidence was uncontroverted that Mother and

Stepfather were not impoverished and were capable of providing for Son's basic support

and education out of their own funds. Son notes that the family lived in a house located on the Land that did not have a mortgage on it. Stepfather worked full time as a car salesman and his wages ranged from $43,500 to $106,000 between 2004 and 2018. Mother worked either part time or full time. Mother and Stepfather raised beef cattle on the Land. Father testified that the couple's cattle sales were a little less than the crop sales but there were some good cattle years so it all averaged out. Mother and Stepfather made significant charitable donations. In 2015, they donated $17,313 to their church. In 2016, they donated $20,335 to their church. In 2017, they donated $17,462 to their church. Mother and Father purchased a condo at the Lake of the Ozarks in April 2017, contributing $25,978.31 toward the cost.

Son claims that the vast majority of the $178,325 in Social Security death benefits he says Mother received on behalf of Son and the $151,472.83 in profits from the Land he says Mother received on behalf of Son should have been set aside for Son in an interest-bearing account. Son alleges those funds should have been turned over to him on his eighteenth birthday.

Son's point relied on is focused on the time period after Mother married Stepfather. Mother and Stepfather had a duty to support Son. The Social Security death benefits from Father's death could not be used to offset that duty. No evidence was presented that Mother and Stepfather were indigent. The trial court did not make any findings regarding whether Mother and Stepfather could support Son with their own funds. To the extent that they could, Son's estate could not be used for ordinary support

27

and maintenance.  The trial court erroneously declared and misapplied the law.  The point is granted.

## Point IV

In his fourth point on appeal, Son claims the circuit court erroneously declared and misapplied the law in ratifying every transaction made by Mother upon finding that Son was "not harmed" by the transactions.  He states that section 475.091 requires ratification by the court to be based on a finding that a transaction was "beneficial" to the protectee. Son argues that Son was "not harmed" is not, as a matter of law, equivalent to a finding that Son benefitted by a transaction, and, moreover, Mother's dissipation of the entirety of Son's Social Security benefits and net Land income and withdrawal of his savings account prior to his 18th birthday could not have benefitted Son as a matter of law.

Section 475.091, pertaining to the court's powers with respect to the estates of minors, states in relevant part:

> The court has the following powers which may be exercised directly or through a conservator in respect to the estate and affairs of minors and disabled persons:
> …
> (2) *Upon finding that the transaction was or is beneficial to the protectee*, the court may approve, ratify, confirm and validate any transaction entered into by a conservator of the estate, without court authorization which it has power under this section to authorize the conservator to conduct.  The power of the court to approve, ratify, confirm and validate transactions entered into by a conservator of the estate without court authorization includes, *without limitation*, retention of real or personal property, compromises of claims by and against the estate, investments, purchases, sales, mortgages, exchanges, abandonment, leases of any duration, improvements, contracts to improve, contracts to sell, contracts to purchase,

28

contracts to exchange and grants of options, easements, profits or other rights with respect to land or other property. It also includes, *without limitation*, payment of a mortgage indebtedness on the real estate of the protectee out of his personal estate and purchase of real estate at a sale made under a mortgage, deed of trust, vendor's lien or other lien held by the protectee. It also includes the power to make, ratify and undertake proceedings for, and agreements incident to, dissolution of the marriage of the protectee, and transactions involving conflicts of interest between conservator and protectee.

(Emphasis added). In its judgment, the trial court quoted this statute and emphasized the two places where the statute states the court's power to ratify is "without limitation." In his point on appeal, Son focuses on the initial words of this subsection requiring the court to find that the "transaction was or is beneficial to the protectee."

In ratifying all of Mother's transactions as conservator, the trial court made the following relevant findings:

This court chooses to exercise its equitable jurisdiction and ratify the transactions of Mother in her role as a conservator for Son under its powers conferred by Section 475.260 RSMo and Section 475.091 RSMo. In doing so, the court finds that Son has not been harmed by the transactions of Mother. The value of a mother's care cannot be reduced to an hours and dollar determination and Son cannot demonstrate with any credible evidence that Mother profited or that he did not reap the sufficient benefit. The only asset Son received as a result of the tragic and unexpected loss of his father was a seventy-five percent interest in the real estate. Son's original seventy-five percent interest in the land still exists today; the land was preserved by Mother. The Cropland, comprising the most valuable portion of Son's interest in the land, was maintained and preserved by Mother. Mother maintained the Cropland by continuing to plant crops and fertilize the soil. No evidence was presented that Mother has accumulated savings or investments as a result of planting crops. In other words, there is no United States currency that either party can point to and claim the currency was profit from farming that cropland that exists today. Mother continued to live a modest life-style, including, but not limited to,

29

continuing to reside in the same house, on the same land, as when Son was born. Section 475.091 RSMo does not require this court to perform an actual accounting in order to ratify Mother's actions and transactions. The parties certainly put effort into attempting to locate documents and re-create eighteen years' worth [of] transactions, but there are years where no information was available which results in assumptions and speculation.

As discussed in Point III, the trial court erred in ratifying any transaction that was used for Son's ordinary support and maintenance if Mother and Stepfather could provide his support with their own funds. Moreover, in its judgment, the trial court stated it was ratifying Mother's transactions because it found that "Son has not been harmed by the transactions of Mother." A transaction that was or is beneficial to Son is not the same as a transaction that did not harm Son. Finally, the trial court focused on the portion of the Land that Son was receiving. Son rightfully argues that he should have received some portion of Father's Social Security death benefits and the profits from the Land. He claims the effect of the trial court ratifying all of Mother's transactions was to essentially deny him the benefit of having a conservator in the first place.

Mother's failure to save some portion of those funds for son was not beneficial to Son. In ratifying all of Mother's transactions, the trial court erroneously declared and misapplied the law. The point is granted.

**Point V**

In his fifth point on appeal, Son claims the circuit court erroneously declared and misapplied the law in stating that a requirement for a remedy for Son included showing that Mother had an existing fund with US currency from crop proceeds. He states section

30

475.130 provides for the remedy of surcharging a conservator without the necessity of showing there was an extant monetary fund. Son argues that Mother breached her duties as conservator by dissipating Son's Social Security benefits and Land income, and failing to provide Son with his savings account funds that she had withdrawn prior to his 18th birthday.

Section 475.130.6, pertaining to the general duties and powers of a conservator of an estate, states in relevant part:

> 1. The conservator of the estate of a minor or disabled person shall, under supervision of the court, protect, preserve and manage the estate, apply it as provided in this code, account for it faithfully, perform all other duties required of the conservator by law, and at the termination of the conservatorship deliver the assets of the protectee to the persons entitled thereto.…
>
> 5. A conservator of the estate has power, without authorization or approval of the court, to:
> (1) Settle or compromise a claim against the protectee or the estate agreeing to pay or paying not more than one thousand dollars;
> (2) Settle, abandon or compromise a claim in favor of the estate which does not exceed one thousand dollars;
> (3) Sell, or agree to sell, chattels and choses in action reasonably worth not more than one thousand dollars for cash or upon terms involving a reasonable extension of credit;
> (4) Exchange, or agree to exchange, chattels and choses in action for other such property of equivalent value, not in excess of one thousand dollars;
> (5) Insure or contract for insurance of property of the estate against fire, theft and other hazards;
> (6) Insure or contract for insurance protecting the protectee against any liability likely to be incurred, including medical and hospital expenses, and protecting the conservator against liability to third parties arising from acts or omissions connected with possession or management of the estate;
> (7) Contract for needed repairs and maintenance of property of the estate;

(8) Lease land and buildings for terms not exceeding one year, reserving reasonable rent, and renew any such lease for a like term;

(9) Vote corporate stock in person or by general or limited proxy;

(10) Contract for the provision of board, lodging, education, medical care, or necessaries of the protectee for periods not exceeding one year, and renew any such contract for a like period;

(11) On or after August 28, 2009, invest the estate in accordance with the provisions of section 475.190.

*6. If, in exercising any power conferred by subsection 5 of this section, a conservator breaches any of the duties enumerated in subsection 1 of this section, the conservator may be surcharged for losses to the estate caused by the breach but persons who dealt with the conservator in good faith, without knowledge of or reason to suspect the breach of duty, may enforce and retain the benefits of any transaction with the conservator which the conservator has power under subsection 5 of this section to conduct.*

(Emphasis added). Section 475.132 states in relevant part:

…

2. The conservator is individually liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if he is personally at fault.

…

4. Any question of liability between the estate and the conservator individually may be determined in a proceeding for accounting, surcharge, or indemnification, or other appropriate proceeding or action.

"If the conservator uses the assets of the estate for his own purposes, he is absolutely liable to account for them, plus any profits derived thereby or plus interest at the highest legal rate." 5D Mo. Prac., Probate Law & Practice § 2026 (3d ed.).

Son's argument in this point is focused on the part of the trial court's judgment which stated, "No evidence was presented that Mother has accumulated savings or investments as a result of planting crops. In other words, there is no United States

currency that either party can point to and claim the currency was profit from farming

that cropland that exists today." Son argues that there is no legal principle that

limits a protectee from recovering against a conservator in a situation where the

conservator has kept funds belonging to the protectee in a bank account. Instead, the

remedy of surcharge is available even if the conservator has expended the protectee's

funds.

We agree with Son that no statute or caselaw requires that a protectee can only

recover from a conservator when the conservator possesses United States currency that

belonged to the protectee. To the extent the trial court suggested otherwise, it is an

erroneous declaration and misapplication of the law. The point is granted.

## Conclusion

The trial court erroneously declared and misapplied the law in several respects.

Mother breached her fiduciary duty to Son when she comingled funds belonging to his

estate with her funds. Mother's failure to properly execute her duties as conservator was

not excused by the probate division dispensing with annual settlements or by Mother's

ignorance of what the law requires of conservators. Because Mother and Stepfather had a

duty to support Son, his estate could not be used for his ordinary support and

maintenance from 2004-2017 due to their own duty to support him. The trial court's

ratification of Mother's transactions is limited to those that were beneficial to Son and

were not for his ordinary support and maintenance from 2004-2017. Finally, there is no

33

requirement that Mother pay a surcharge only with funds she has from Son's estate in the form of United States currency.

The judgment is reversed. On remand, the trial court is ordered to enter judgment in accordance with this opinion. As finder of fact, the trial court is charged with determining the amount of profits from the Land and the amount of Social Security death benefits, after permissible expenses, that should have been set aside for Son in an interest-bearing account. The trial court should also consider the value of the funds Mother withdrew from the certificate of deposit.

_____
Anthony Rex Gabbert, Judge

All concur.

34